## GARCIA v. YZAGUIRRE et al.
### (No. 77–2845.)

(Commission of Appeals of Texas, Section B. June 21, 1919.)

1. VENDOR AND PURCHASER ☞61—OPTION—LAND INCLUDED.

Where maker conveyed land to payee in part payment of note, and contemporaneously obtained option to purchase land owned by payee, who prior to such conveyance had no land, the option contract included the land so conveyed.

2. PRINCIPAL AND AGENT ☞171(7)—CONTRACT BY VENDOR'S AGENT—RATIFICATION.

Where contract entered into by vendor's agent was on its face a contract of the agent, but disclosed that agent was representing the vendor, and that vendor was to receive the benefit therefrom, and vendor with full knowledge of the contract accepted conveyance from purchaser pursuant to the contract, he ratified the contract and made himself liable thereupon.

3. PRINCIPAL AND AGENT ☞132(1)—CONTRACT WITH AGENT—LIABILITY OF PRINCIPAL.

Even when a contract is made in the name of an agent and it appears from the face of the contract that the agent is bound thereby, the liability of the principal is not necessarily excluded if upon a reading of entire contract it appears that it was the intention of the parties that the principal should also be bound.

4. PRINCIPAL AND AGENT ☞175(2) — LAND CONTRACT—CONTRACT WITH AGENT—RATIFICATION.

Where son made contract conveying the land belonging to father, grandmother and aunt, the father by ratifying the contract did not become liable for failure to convey the property of the aunt and grandmother.

---

☞For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

**5. VENDOR AND PURCHASER ☞351(2) — BREACH OF CONTRACT—MEASURE OF DAMAGES.**

Where vendor, having ability to perform contract, puts it out of his power to do so or fails or refuses to carry out contract, purchaser's measure of damages is the difference between the contract price of the land and its reasonable market value.

**6. VENDOR AND PURCHASER ☞351(8)—CONTRACT WITH PARTY WHO HAS NO TITLE—DAMAGES.**

A purchaser who contracts to purchase land from one who has no title can, in the absence of fraud, recover only the amount paid on the contract, if any, and such special damages not including the loss of his bargain as he may allege and prove.

**7. LIMITATION OF ACTIONS ☞180(2)—PLEADING—SPECIAL EXCEPTION.**

The defense of limitation may, where the facts appear upon the face of the pleadings, be taken advantage of by special exceptions.

**8. PLEADING ☞228—SPECIAL EXCEPTIONS—WAIVER.**

Plaintiff could not avail himself of defense of limitation to note set up in defendant's cross-action without having pleaded limitation in his reply, though he had raised such defense by special exception, where court had not acted upon the exception, and judgment of the court thereon had not been invoked by plaintiff; the exception having been waived.

Error to Court of Civil Appeals of Fourth Supreme Judicial District.

Suit by Porfirio P. Garcia against Jesus Maria Yzaguirre, Eduardo Yzaguirre, and others. Judgment for plaintiff against defendants named reversed by Court of Civil Appeals, and judgment rendered for defendant first named against plaintiff (172 S. W. 139), and plaintiff brings error. Reversed, and judgment rendered for first-named defendant, in accordance with opinion.

Don A. Bliss, of San Antonio, Jno. W. Hornsby, of Austin, and Cobbs, Eskridge & Cobbs, of San Antonio, for plaintiff in error.

James B. Wells, of Brownsville, Denman, Franklin & McGown, of San Antonio, and Herbert Davenport, of Brownsville, for defendants in error.

MONTGOMERY, P. J. Suit by Porfirio P. Garcia against J. M. Yzaguirre, Eduardo Yzaguirre, Cecelia Garcia de Villareal, Josefa Villareal Hinojosa, and her husband, Octaviano Hinojosa, to recover damages for the alleged breach of a contract giving Porfirio P. Garcia an option to purchase certain lands in Starr county, Tex.

On February 25, 1907, J. M. Yzaguirre held a promissory note executed by Porfirio P. Garcia for $4,000, with interest, which was then past due.

Certain negotiations had taken place between them looking to a payment of the note and to the acceptance by Yzaguirre of a conveyance to certain lands owned by Garcia in part payment thereof and of the acceptance by Yzaguirre of a renewal note for the balance.

On February 25, 1907, Jesus Maria Yzaguirre wrote to Garcia the following letter:

"On date of 19th of this month, I wrote you making you my proposition for settlement of the account which you owe that is already due, but to this day I have had no answer from you. My son goes to your city and has my instructions to settle with you this account and to admit in part payment these properties you have down here. Please have the kindness to settle with him, as I desire that this account be settled to require or to employ any other person to make this settlement, which is very simple, and, for this reason, I desire that you settle and agree with my son now that he is there."

Eduardo Yzaguirre, a son of Jesus Maria Yzaguirre, went to San Antonio, Tex., where Garcia lived and negotiated with him for a settlement of the note.

On March 7, 1907, Porfirio P. Garcia wrote and delivered to Eduardo Yzaguirre the following letter:

"Mr. Eduardo Yzaguirre, Present—Esteemed Nephew: In consideration of the option which you have offered me that I can buy, and you thereby, bind yourself, to sell to me, my heirs or successors, at whatever time that I may request it within one year's time counting from to-morrow, the 8th day of March, the rights in land in porciones 90, 91 and 92, or adjacent thereto, which your grandmother Dona Cecilita Garcia, widow of Villareal, and your aunt, Miss Josefa Villareal, have, and, which also in the land of Santo Domingo, situated in Starr county, Texas, your father may represent, said three rights consisting of from 5,000 to 6,000 acres, more or less, and for which land you have fixed the price of $1.25 per acre, payable, in cash, at the time of my receiving the corresponding conveyances of same, I have agreed with you, to-day, in the following, in relation to the maturity of my note of December 31, last, executed in favor of your father on Nov. 7, 1906, and the rates of interest corresponding thereto to this date:

| | |
|---|---|
| $ 130.00 | Amount by check on National Bank of Commerce, No. 590, your favor. |
| $1,780.00 | Agreed amount, as value of the 1,463 acres. more or less, which I represent in porciones 90, 91 and 92, and my property in Rio Grande City, situated in Starr county, Texas, for which two buildings I will make deed of conveyance in favor of your father to-morrow, delivering it to you duly executed. |
| $2,250.00 | Amount my note which I will execute with date of to-morrow, favor of your father, which will mature, as per agreement, on January 7, 1908, with 3 per cent. annual interest. |
| $4,160.00 | Total. |

"[Signed]  Porfirio P. Garcia."

☞For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

On March 8, 1907, Eduardo Yzaguirre wrote and delivered to Garcia the following letter:

"Mr. Porfirio P. Garcia, Present—Esteemed Uncle: This serves to show you that in entire conformity with all of the terms contained in yours dated yesterday, I have, to-day, received from your hands the conveyance executed by you in favor of my father, of the right of 1,463 acres of land, more or less, which you have in porciones 90, 91 and 92, situated in Starr county, Texas, and of your house and property situated in Rio Grande City, Texas, I have, also, to-day received your note of this date, executed in favor of my father, for the sum of $2,250.00, gold, with 3 per. cent. annual interest, which matures January 7, 1908, having also received, yesterday, your check No. 590, in my favor, on the National Bank of Commerce for $130.00—all of which is in full payment and cancellation of your matured note—executed November 7, 1906, for $4,000.00, in favor of my father, with interest until yesterday, and which note upon my return to Camargo, Mexico, which will be within a few days, I promise to send you duly canceled.

"I am your cousin who respects you.
"[Signed] Eduardo Yzaguirre."

At the time the last letter above copied was delivered Garcia delivered to Eduardo Yzaguirre the deed, check, and note referred to in the letter of March 7th. A copy of the correspondence between Garcia and Eduardo Yzaguirre was mailed to and received by Jesus Maria Yzaguirre, and a few days after the receipt of same he canceled the note of $4,000 referred to in said correspondence, and mailed the same to Garcia.

The evidence showed that Jesus Maria Yzaguirre received and accepted the deed, check, and note for $2,250 referred to in said correspondence, and executed and mailed to Garcia a receipt showing that he had received the check, deed, and note above referred to in settlement of the $4,000 note of Garcia theretofore held by him.

On November 22, 1907, Garcia wrote and mailed to Eduardo Yzaguirre a letter in which he stated that he was then ready, willing, and able to pay according to the terms of the option evidenced by the letters above referred to for the 5,000 or 6,000 acres of land referred to in said letter, and requested Eduardo Yzaguirre to send him an abstract showing a good title to said lands so that he might have the same examined by his lawyer, and that in case the title proved good that he would have the proper deeds prepared to be signed by the parties in whom the title appeared to be, and that he would pay for said lands at the rate of $1.25 per acre, as provided for in said option agreement. A carbon copy of this letter was also mailed to and received by Jesus Maria Yzaguirre.

On December 8, 1907, Eduardo Yzaguirre not having replied to Garcia's letter of November 22d, Garcia again called his attention to said letter and asked for an immediate reply.

On December 14, 1907, Eduardo Yzaguirre replied to the two letters of Garcia above referred to, his letter being as follows:

"In answer to your favor of 22d November last, and the 8th of the present, I say to you:
"That I offered you that if within the term of one year you could buy the land if yet existing in the possession of my father I would sell it to you, but it is already some time that this land was sold."

This letter it appears was read by Jesus Maria Yzaguirre before it was sent.

It appears from the evidence that prior to the receipt of the letter of November 22, 1907, by Eduardo Yzaguirre that Jesus Maria Yzaguirre, Cecelia Garcia de Villareal and Josefa Villareal Hinojosa, joined by her husband, Octaviano Hinojosa, had entered into a contract for a sale of all of the lands upon which Garcia had an option, and that an actual conveyance of said land was made to Jacobo C. Guerra and J. R. Munroe on March 4, 1908. The Court of Civil Appeals found that prior to the time of the conveyance from Garcia to Jesus Maria Yzaguirre that Jesus Maria Yzaguirre owned no interest whatever in the lands referred to in the option contract and that Eduardo Yzaguirre never in fact owned any interest in said lands at any time, and that the only interest which Jesus Maria Yzaguirre ever owned was the undivided interest conveyed to him by Garcia by deed dated March 8, 1907.

On December 23, 1907, Garcia instituted this suit for damages for the breach of the contract, evidenced by the letters hereinbefore set out, and as his measure of damages asked a judgment against all the parties defendant for the difference between the contract price of $1.25 per acre and the reasonable market value of said lands at the time of the breach of such contract.

In said petition Garcia also sought an injunction, restraining Jesus Maria Yzaguirre from bringing suit on the note for $2,250, executed by Garcia and payable to Jesus Maria Yzaguirre and from transferring or assigning the same during the pendency of the suit. On December 23, 1907, the district judge by proper order granted the injunction in part, and directed a writ of injunction to issue, restraining the defendant Jesus Maria Yzaguirre from transferring or assigning the note, which injunction was duly issued. The two Yzaguirres were served with citation, soon after the suit was filed, but the other defendants were not cited for several years.

The original answer of the defendants the Yzaguirres, consisted of simply the general denial and general demurrer and the case remained upon the docket until the year 1914, at which time the plaintiff filed an

amended petition and the defendants filed amended answers, and among other things Jesus Maria Yzaguirre by reconvention sought a recovery against Garcia upon the note for $2,250.

The case was tried by a jury and submitted upon special issues, and the jury found the following facts:

That Eduardo Yzaguirre when he wrote the letter of March 8, 1907, to Garcia was authorized by Jesus Maria Yzaguirre to accept the proposition made in the letter of March 7, 1907, from Garcia to Eduardo Yzaguirre.

That Eduardo Yzaguirre was not authorized by Cecelia de Villareal or by Josefa Villareal Hinojosa to accept the proposition made in said letter of March 7, 1907, and that Jesus Maria Yzaguirre was never authorized by Cecelia de Villareal or by Josefa Villareal Hinojosa to accept the proposition made by Garcia in said letter of March 7, 1907.

That Jesus Maria Yzaguirre a short time after March 7, 1907, was fully informed of the contract between Eduardo Yzaguirre and Garcia, and knew the contents of the letters passing between them.

That Jesus Maria Yzaguirre, when fully informed of the contract made by Eduardo Yzaguirre and Garcia by the letters above referred to, did not repudiate said contract, but in fact ratified the same.

That Porfirio P. Garcia was ready, willing, and able to carry out and perform his contract, and that within a year from the date thereof notified Eduardo Yzaguirre of his readiness, willingness, and ability to purchase said lands at the price named in said contract, and pay for same as therein provided, and that Jesus Maria Yzaguirre was informed of the facts stated above.

The jury further found that Eduardo Yzaguirre refused to perform said contract, and that Jesus Marie Yzaguirre knew of such refusal at the time or about the time said refusal was made, and approved of the action of said Eduardo Yzaguirre in so refusing.

The jury further found that the market value per acre of the lands was $1.75 per acre, and that the total quantity in acres owned by the defendants was 5,573.48 acres.

Upon this verdict in connection with the other facts in the case the trial court rendered judgment against Jesus Maria and Eduardo Yzaguirre for $3,850.31, and also rendered judgment in favor of Jesus Maria Yzaguirre against Garcia on the note for $2,297.81, and, setting off one against the other, rendered a net judgment for Garcia against the two Yzaguirres for $1,552.50. Judgment was rendered in favor of the other defendants.

The two Yzaguirres appealed, and the Court of Civil Appeals reversed the judgment of the trial court and rendered judg-ment that plaintiff, Garcia, take nothing, and that Jesus Maria Yzaguirre recover from Garcia the amount of the note sued on in reconvention, including principal, interest, and attorney's fees. 172 S. W. 139.

Such other facts as we think necessary will be stated in the opinion.

## Opinion.

The Court of Civil Appeals held that the land conveyed by Garcia to Jesus Maria Yzaguirre on March 8, 1907, was not included in the contract evidenced by the letters, and that prior to the conveyance from Garcia that Jesus Maria Yzaguirre and Eduardo Yzaguirre had no title to any part of the land referred to in the contract; that, as the letter of March 7, 1907, referred to the lands then owned by Jesus Maria Yzaguirre, and as the letter of March 8, 1907, accepting the proposition of Yzaguirre, did not refer to any lands except the lands described in the letter of March 7, 1907, the lands conveyed by Garcia to Jesus Maria Yzaguirre by deed dated March 8, 1907, were not within the terms of the contract.

The letter of March 7, 1907, upon its face binds Eduardo Yzaguirre to convey the rights in said land "represented" by his father, which we construe to mean "owned" by his father.

The whole quantity of land referred to in the letter of March 7th was estimated at some 5,000 to 6,000 acres. The undisputed evidence shows that the total amount owned by all the defendants, including that conveyed by Garcia to Jesus Maria Yzaguirre, was only 5,573 acres. It also appears under the terms of the contract that it was contemplated that the contract for the conveyance of the lands to Garcia was only to become effective when Garcia had complied with the terms of the contract and had made a conveyance to Jesus Maria Yzaguirre. The delivery of the deed by Garcia and the executory contract to reconvey were contemporaneous. The letter of March 7th, setting out the terms of the proposed agreement, had no effect until accepted on the 8th of March, and contemporaneously with its acceptance Jesus Maria Yzaguirre acquired the title to the land conveyed by Garcia.

[1] Considering the fact, as found by the Court of Civil Appeals, that Jesus Maria Yzaguirre, on March 7, 1907, had no title whatever to any of the lands, and considering the further fact that the conveyance to Yzaguirre by Garcia and the option contract in favor of Garcia took effect at the same instant, we are of opinion that the option contract includes the land conveyed by Garcia to Jesus Maria Yzaguirre. When the contract is read in the light of the surrounding circumstances, we think that this is the only reasonable construction that can be put upon the contract.

The most serious question in this case is whether the contract evidenced by the letters is the contract of Eduardo Yzaguirre alone or Jesus Maria Yzaguirre alone, or both the Yzaguirres. The finding of the jury is conclusive against any liability on the part of the other defendants.

The contract evidenced by the writing, construed literally, does not purport upon its face to bind any one except Eduardo Yzaguirre to convey the property named, if Garcia elected to exercise his option. The written contract discloses that the title to be conveyed was not in Eduardo Yzaguirre, but in the other parties named in the contract.

This, then, is a contract by which Eduardo Yzaguirre obligated himself to sell and convey property which he at the time did not own.

The reason for the acceptance by Garcia of this personal obligation of Eduardo, although the consideration for the obligation passed to Jesus Maria Yzaguirre, is clearly disclosed by the testimony of Garcia, who testified:

"At the time of the writing of this letter, I made inquiry of Mr. Eduardo Yzaguirre as to what his authority was with reference to his grandmother, Mrs. Cecelia Villareal, and his aunt, Josefa Villareal. I asked him if he had power to make such a contract with me, including the land of his grandmother and that of his aunt, Josefa Villareal, and his father. He said, 'Yes; he had absolutely so.' Not only did he say that, but he said the land was in fact his, but had not been transferred to him. He said that his grandmother and his aunt and his father had promised to donate it to him, and that he was going to establish a goat ranch and put a brother-in-law of his on it, and that is what he wanted this land for."

This testimony was not controverted; Eduardo Yzaguirre not testifying.

This contract, construed literally, was on its face only the contract of Eduardo Yzaguirre, and the evidence showed that it was the purpose of the parties to bind Eduardo. The question arises as to what, if any, extent can this contract be enforced against Jesus Maria Yzaguirre, to whom the consideration passed from Garcia.

In the case of Heffron v. Pollard, 73 Tex. 100, 11 S. W. 165, 15 Am. St. Rep. 764, in discussing the liability of a principal on a contract made by the agent in his own name, Judge Gaines said:

"If the principal be disclosed, and it appear upon the face of the contract that agent does not intend to bind himself, the agent is not liable. If the principal be not disclosed it is universally conceded as to nonnegotiable contracts not under seal that parol evidence is admissible to show the principal and to hold him liable upon a contract made in the name of the agent for his benefit. This may seem to be an exception to the rule that parol evidence is not admissible to vary the terms of a written contract, but it is not so held. It is said not to vary the terms of the contract, but to bring in a new party whom the law holds bound by it by reason of his relation to the party in whose name it is executed for his benefit. In such a case the principal may either sue or be sued. But a plaintiff cannot sue both; he must make his election. If, however, the principal be disclosed, and the face of the writing shows that the agent is bound, it is presumed that the other party has elected in the contract itself to look to the agent, and the principal is not liable upon it."

In Heffron v. Pollard, the case of Chandler v. Coe, 54 N. H. 56, is cited. We find upon examination of the New Hampshire case that the rule announced in the last sentence of the quotation given above from the opinion of Judge Gaines, that is, that where the agent acts for a disclosed principal and gives his personal obligation, the principal is not liable thereon, is clearly announced.

In Mechem on Agency, it is said that the weight of authority is opposed to the proposition that a disclosed principal cannot be held liable on a contract of an agent executed in his own name for the benefit of the principal. Mechem on Agency (2d Ed.) §§ 1420, 1423, 1712, 1713.

It is here contended that under the case of Heffron v. Pollard we are bound to hold that Jesus Maria Yzaguirre is not liable on the contract here sued on, as Garcia elected to, and did, accept the personal obligation of the agent.

[2] Under the facts of this case, we do not think that this rule should be so applied as to relieve Jesus Maria Yzaguirre from the obligation of the contract in so far as it affected the property belonging to him, or which it was in his power to convey. While it does not appear from the contract that he was bound to make the conveyance, yet the contract itself discloses that Eduardo, his son, in making the contract, was acting for him, and further discloses that he received the benefit of the consideration paid for the option contract. The evidence in this case shows that with full knowledge of this contract, and all of its terms, Jesus Maria Yzaguirre received and accepted the conveyance of the identical land which under the terms of the agreement Garcia had an option to purchase. In so far as this property is concerned, by accepting it under the contract, he ratified it, and we think he ought to be bound by it. Without some action on his part, Eduardo could not possibly perform the contract made for his benefit.

[3] Even when a contract is made in the name of an agent, and where it appears from the face of the contract that the agent is bound thereby, the liability of the principal thereon is not necessarily excluded if upon a reading of the entire contract it appears that it was the intention of the parties that the principal should also be bound. As said in section 1166 of Mechem on Agency, referring to informal contracts:

"In determining whether a given form of execution is sufficient to bind the principal, the primary consideration is, What is the true intention of the parties expressed in this contract? In settling this question, it must be borne in mind that no particular form of words is required, and that the intention is to be gathered from the whole instrument, and not from any isolated portion thereof. The situation of the parties and the circumstances of the case are to be taken into consideration. * * * If upon a survey of the whole instrument it can be concluded that the true object and intent of it are to bind the principal, and not the agent, courts of justice will adopt that construction of it, however informally it may be expressed."

In this case, looking to the entire contract and the situation of the parties, we think that this contract should be so construed as to hold Jesus Maria Yzaguirre bound by its terms, in so far as it affects the property owned by him. This, in our view of the matter, is a reasonable construction of the transaction. It is not reasonable to hold that Jesus Maria Yzaguirre could, under the contract, accept property which the contract itself provided should, under certain conditions, be reconveyed to Garcia, and yet hold that Jesus Maria Yzaguirre was not bound by the contract in so far as it required a reconveyance of such property.

[4] We do not think that Jesus Maria Yzaguirre should be held liable, however, upon this contract, because of the failure of Eduardo Yzaguirre to convey property in which Jesus Maria Yzaguirre had no interest, and which was not under his control. In so far as the property of the grandmother and aunt is concerned, we think it evident that Garcia accepted the obligation of Eduardo Yzaguirre alone to secure a conveyance thereof.

[5] As to the measure of recovery, we think Jesus Maria Yzaguirre is liable for the difference between the contract price of the land owned by him and its reasonable market value, which, as found by the jury, was 50 cents per acre. The Court of Civil Appeals found that Jesus Maria Yzaguirre owned 1,357.88 acres. The amount of recovery, therefore, should be $678.94.

This is the measure of damages applicable where the vendor in an executory contract has the ability to perform, but puts it out of his power to do so, or fails or refuses to carry out his contract.

As to Eduardo Yzaguirre, the question arises whether in this character of suit any damages can be recovered against him on account of his breach of the contract. It is conceded that he never had title to any part of the land. It is not sought to recover damages by reason of any fraud on his part which may have induced the making of the contract. The question is, can a vendee in an executory contract for the sale of land which the vendor never owned, and where the vendee has paid nothing on the contract, recover damages based on the loss of his bargain? Upon this point

213 S.W.—16

there is great conflict in the authorities, but the authorities in this state seem to hold that a vendee under the circumstances stated cannot recover damages for the loss of his bargain.

In Hall v. York, 22 Tex. 644, it is said:

"It is well settled by the case of Sutton v. Page, 4 Tex. 142, that in a case like the present, where the vendor of land is not able to make title, the vendee's measure of damages is the purchase money and interest, and nothing more."

In Wheeler v. Styles, 28 Tex. 240, although not necessary to the decision, it is said:

"That in the absence of fraud, a vendee in an executory contract for the sale of land can recover against a vendor only the money paid on the contract, and interest."

The case of Clifton v. Charles, 53 Tex. Civ. App. 448, 116 S. W. 121, was a case in which Clifton made a contract to sell to Charles certain land which Clifton did not at the time own, and never afterwards acquired. In that case it seems that Clifton represented that he and his brother, for whom he was acting, owned the land. The suit was by Charles to recover damages for the breach of this contract, and Charles, the plaintiff, recovered judgment in the trial court for the difference between the contract price and the value of the land at the time of the breach of the contract. The judgment was reversed and rendered by the Court of Civil Appeals of the Fourth District, and the reason for the decision is so clearly expressed by Justice Neil that we will here insert a portion of the opinion:

"This leaves for solution the question whether one who has contracted to convey land which he did not own when the contract was made nor afterwards can be held liable in an action ex contractu for the excess of the market value of the land at the time the contract was made or should have been performed over the contract price. It seems to be settled law in this state that where a vendor in a contract to convey land did not have title at the time the contract was made, and is therefore unable to make title, the purchaser is not entitled to recover the difference between the contract price and the market value, but is confined, if he has paid the purchase money, to the return thereof, with interest from date of payment, and such special damages as he may have incurred by reason of having been induced to enter into the contract; and, if he has not paid the purchase money, then he is confined to his special damages, which he must allege and prove. Hall v. York's Adm'r, 22 Tex. 642; Wheeler v. Styles, 28 Tex. 240; Roberts v. McFadden, 32 Tex. Civ. App. 47, 74 S. W. 110; Hollingsworth v. Mexia, 14 Tex. Civ. App. 363, 37 S. W. 457; Sutton v. Page, 4 Tex. 142; Jones on Real Property, § 943. The principle stated is a corollary to the rule that the measure of damages for a breach of the covenant of seisin, where no interest has passed, is the consideration paid with interest, which is based upon the supposition that the grantee took nothing by the conveyance, for the

reason that the grantor had no interest to convey. If, in cases where the vendor had no title either at the time the contract was made or between that date and the trial, the rule was otherwise than as just stated for a breach of the covenant of seisin, 'then,' as is aptly said by counsel for appellant in their supplemental brief, 'the vendor could easily avoid its effect by delivering to the purchaser a warranty deed and accepting the purchase money. Suppose in this case the appellant had recognized the validity of the contract, and had tendered the purchaser a warranty deed to the land, and the purchaser had accepted it, and paid him the full amount of the purchase money and afterwards had discovered that defendant had no title to the land. It is undisputed that in such case the measure of damages on the warranty would have been simply the purchase money or the portion thereof that he had paid, with interest thereon.' As is said in Roberts v. McFadden, supra: 'The same rule is applied in most jurisdictions for the breach of executory contracts to convey real estate, and, if the rule in the one case is sound, we can perceive no reason why it should not apply in the other; for manifestly the same reasons exists for its application.' "

In the case of Clifton v. Charles the question thus decided was the controlling and the only important question in the case, and writ of error was refused by the Supreme Court. We, therefore, infer that the Supreme Court approved the opinion upon this point.

The case was followed in Hahl v. West, 61 Tex. Civ. App. 431, 129 S. W. 876, and in Vacarezza v. Realty Investment Co., 165 S. W. 516, and in the latter case a writ of error was also refused.

[6] From these authorities it seems to be the settled law in this state that a vendee who contracts to purchase land from one who has no title can, in the absence of fraud, recover only the amount paid on the contract, if any, and such special damages, not including the loss of his bargain, as he may allege and prove.

In this case both parties at the time the contract was made knew the condition of the title, and knew that Eduardo Yzaguirre in fact had no title, and there was neither allegation nor proof that Eduardo Yzaguirre was guilty of any fraud which induced the making of the contract. We, therefore, hold that Garcia was not entitled to recover anything against Eduardo Yzaguirre.

[7, 8] The remaining question in this case involves the right of Jesus Maria Yzaguirre to recover upon the note set up in his cross-action against Garcia. The only defense urged is that the note was barred by limitation. Under the record, Garcia is not in position to avail himself of this defense. In reply to the cross-action of Jesus Maria Yzaguirre, Garcia specially excepted to the plea in reconvention, because it appeared from its allegations that the note was barred by limitation. This exception was not, so far as the record shows, called to the attention of the court, and no action thereon is shown. It is well settled that the defense of limitation may, where the facts appear on the face of the pleading, be taken advantage of by special exception; but it is also well settled that where the judgment of the court is not invoked, and where the court does not act upon the special exception, it is waived. The reply of Garcia to the action on the note does not contain a plea setting up limitation against recovery thereon. Under these facts, we feel bound to hold that the defense of limitation was waived.

Our conclusion upon the whole case is that the plaintiff Garcia in the lower court was entitled to recover from the defendant Jesus Maria Yzaguirre the sum of $678.94, together with interest thereon at the rate of 6 per cent. per annum from November 22, 1907, and that he was not entitled to recover anything against the other defendants; that the defendant Jesus Maria Yzaguirre was entitled to, recover against the plaintiff, Garcia, the amount of the note sued on, together with the interest as therein provided for from the date thereof, and that the recovery by Garcia should be set off against the recovery by Jesus Maria Yzaguirre; and that judgment should be here rendered for Jesus Maria Yzaguirre for the net amount due him after deducting the amount herein adjudged in favor of Garcia against him, with 10 per cent. on such net amount as attorney's fees; and we recommend that the judgments of the trial court and the Court of Civil Appeals be reversed, and that judgment be here rendered as indicated above.

PHILLIPS, C. J. The judgment recommended by the Commission of Appeals is adopted and will be entered as the judgment of the Supreme Court.