**WILKIRSON v. YARBROUGH.  (No. 9695.)**

(Court of Civil Appeals of Texas. Fort Worth. Nov. 26, 1921. Rehearing Denied Jan. 7, 1922. Writ of Error Dismissed for Want of Jurisdiction March 15, 1922.)

1. **Mines and minerals** ⊕57—**Finding that lessor's breach of contract to furnish abstract showing merchantable title was willful and wanting in good faith held warranted.**

In lessor's action to cancel oil lease placed in escrow, for lessee's failure to pay purchase price, in which lessee brought cross-action for damages for lessor's failure to furnish abstract showing a good and merchantable title, lessor's failure to testify or to furnish an abstract showing his children had no interest therein warranted a finding that his failure to furnish an abstract showing merchantable title was willful; the facts being peculiarly within his own knowledge.

2. **Mines and minerals** ⊕57—**Lessee could object to abstract for failure to show marketable title in lessor, though defect was not pointed out until after minor defects were cured.**

Where contract for oil lease required lessor to furnish abstract showing marketable title, and gave lessee specified period for examination thereof, and entitled the lessor to a reasonable time in which to cure minor defects, the lessee was not required to accept the lease, on failure of abstract to show lessor's children by a former marriage to be without any interest, though the lessee's attorney in examination of the abstract in the first instance did not make such objection until after such minor defects were cured.

3. **Mines and minerals** ⊕57—**Measure of damages for lessor's failure to furnish abstract showing marketable title stated.**

Where oil and gas lease was placed in escrow pending performance of contract to execute the lease, requiring lessor to furnish abstract showing marketable title in consideration of lessee's agreement to pay specified amount for the lease, the lessee's measure of damages for lessor's breach of contract to furnish abstract showing merchantable title was the difference between the contract price and the market value of the lease; the recovery not being limited to the amount paid on the execution of the contract with interest.

Appeal from District Court, Nolan County; W. P. Leslie, Judge.

Suit by O. L. Wilkirson against Jack Yarbrough and the Continental State Bank of

Sweetwater, in which the first-named defendant filed a cross-action. Judgment for defendant bank discharging it from liability to either of the parties, and for named defendant on the cross-action, and plaintiff appeals. Affirmed.

Goree, Odell & Allen, of Fort Worth, and James Spiller, of Sweetwater, for appellant.

Woodruff & Woodruff, of Sweetwater, and Bradley, Burns, Christian & Bradley, of Fort Worth, for appellee.

DUNKLIN, J. O. L. Wilkirson instituted this suit against Jack Yarbrough to cancel a certain oil and gas lease which he had contracted to give Yarbrough on five sections of land in Nolan county, and which lease had been deposited in escrow, but which had never been delivered to Yarbrough; also to cancel his written contract to execute and deliver said lease. Plaintiff alleged that by the terms of the written contract made by himself and the defendant he had obligated himself to furnish to the defendant an abstract showing a good and merchantable title to the land covered by the lease, and that defendant had bound himself to accept such a showing of title and to pay the purchase price therefor, as stipulated in the contract; that plaintiff had furnished such a showing of title, but that defendant had breached his contract to accept the same and pay the agreed consideration therefor. The relief prayed for by the plaintiff was a cancellation of the lease.

In his answer the defendant denied that plaintiff had furnished an abstract showing a good and merchantable title, and for the alleged breach of contract in that respect, by cross-action, sued to recover for the loss of the benefits of his bargain; in other words, for the difference between the market value of the lease and the purchase price which defendant had contracted to pay. But defendant did not resist plaintiff's prayer for a cancellation of the lease.

The case was tried before the court without a jury, and judgment was rendered canceling the lease, but decreeing a recovery in favor of the defendant on his cross-action against plaintiff for the damages prayed for, from which judgment on the cross-action the plaintiff has prosecuted this appeal.

The trial judge filed findings of fact and conclusions of law. The following facts appear in the court's findings:

Plaintiff, Wilkirson, and defendant, Yarbrough, entered into a written contract executed by both, by the terms of which Wilkirson contracted to execute and deliver to Yarbrough an oil and gas lease on five sections of land in Nolan county, for a cash consideration to be paid in the sum of $7,600, of which $500 was paid by Yarbrough at the time the contract was executed. The balance of the consideration, to wit, the sum of $7,100, was to be paid upon the delivery to Yarbrough of the lease contracted for. The contract contained these two stipulations:

"Third. Said O. L. Wilkirson has agreed and contracted and hereby agrees and contracts to forthwith deliver to the said Jack Yarbrough an abstract of title, or abstracts of title down to date showing good and merchantable title in the said O. L. Wilkirson, to all of said land hereinabove set out. * * *

"And the said Jack Yarbrough shall have 20 days after the delivery of said abstract of title within which to have his attorneys pass upon the title to said land, but said attorney shall not, without excuse, delay passing on said title, but shall proceed to examine same with reasonable dispatch within said time, if possible for them to do so.

"And in the event said abstract of title shows a good and merchantable title to the said land in the said O. L. Wilkirson, and shows that he has the legal right and authority to execute said oil and gas lease, then the balance of the purchase money for said oil and gas lease is to be immediately paid into said bank for said O. L. Wilkirson, but, in the event said abstract of title shows minor defects or such defects as can be cured within a reasonable time, then the said O. L. Wilkirson is to cure said defects as soon as possible and return said abstract of title to said Jack Yarbrough, showing said defects cured, and said purchase money is to be immediately paid into said bank to the credit of the said O. L. Wilkirson, and said oil and gas lease is to be delivered as above set out."

Contemporaneously with the execution of the contract Wilkirson executed the oil and gas lease stipulated in the contract and deposited it in escrow with the Continental State Bank of Sweetwater, Tex., to be delivered in accordance with the stipulations in the written contract quoted above. Thereafter plaintiff furnished to Yarbrough an abstract of title to the land covered by the lease for examination. Yarbrough's attorney examined it and returned it to Wilkirson's attorney, together with a written opinion in which he "pronounced the title to said lands to be good and merchantable and in the said O. L. Wilkirson, but pointed out and called attention to numerous minor defects in the title to said lands and requested that the same be cured as provided for in said contract." That report upon the title was made within the 20-day time limit for examination of the abstract which was provided for in the contract. Upon receipt of that opinion with respect to the title, Wilkirson proceeded with reasonable dispatch to cure the minor defects, and about 40 days later returned to Yarbrough's attorney the original abstract with a supplement thereto for examination, which supplemental abstract, according to the court's findings, showed that what Mr. Woodruff, Yarbrough's attorney, had denominated in his original opinion as minor defects were cured. But at the time the supplemental abstract

was presented to Mr. Woodruff he informed Mr. Spiller, plaintiff's attorney, that since the first examination of the abstract he had learned that Wilkirson had been married prior to his marriage with his present wife; that his former wife had died leaving surviving children, some of whom had also died likewise leaving children; that, before proceeding with the further examination of the title, he would require some showing in the abstract that Wilkirson's children by his first marriage owned no interest in the land. Neither the original abstract nor the supplement furnished any information which would cure that objection. The court found as a fact that Wilkirson had been previously married; that his wife had died leaving seven or eight children and some grandchildren, some of whom were living at the time the contract was entered into; and that Wilkirson had acquired the land about June 7, 1910. The contract between plaintiff and defendant was dated in May, 1919. At the time Yarbrough's attorney requested an additional showing that Wilkirson's children by his former marriage had no interest in the land, Wilkirson's attorney promised that he would call the matter to Wilkirson's attention and have the abstracts cured in that particular, if the same could be done. But thereafter neither Wilkirson nor his attorney did anything to remove the objections made by Yarbrough's attorney, and by reason of their failure to do so Yarbrough did not deposit with the Continental State Bank of Sweetwater the balance of the purchase price, contracted to be paid for the lease, but he was ready, willing, and able to carry out the contract according to its terms and stipulations upon the removal of the objections made by his attorney to the title.

The trial judge further found that the reasonable market value of the lease at the time the contract therefor should have been closed and the lease delivered to Yarbrough as contemplated by said contract was $5 per acre, or, in the aggregate, $16,000 and that the difference between such value and the contract price of $7,600 was $8,400, and he rendered a judgment in favor of Yarbrough for the latter sum, plus the $500 which Yarbrough had already paid to Wilkirson at the time the contract was executed, thus making the judgment in the sum of $8,900.

The Continental State Bank of Sweetwater was also made a party defendant, but only as a stakeholder of the lease. It tendered the lease into court, and after the same had been canceled the court ordered it returned to the plaintiff and discharged the bank from any liability to either of the parties, with costs. And no complaint has been made of that portion of the judgment.

[1] Whether or not plaintiff's children by his former marriage owned an interest in the land depended upon facts peculiarly within his knowledge, but he failed to testify upon the trial himself, and failed to introduce any evidence from any other source upon that issue, and his failure to make such proof, coupled with his failure to furnish an abstract showing that said children owned no interest in the land, warranted a finding that his breach of contract with Yarbrough was willful and wanting in good faith.

By numerous assignments appellant presents the contention substantially to the effect that he complied with the terms of the contract as the same was written, and hence the court erred in concluding that he was guilty of a breach of it. It is insisted, in effect, that since defendant's attorney, upon his first examination of the title, gave to the plaintiff's attorney his written opinion to the effect that the abstract showed that Wilkirson owned a good and merchantable title to the lands subject only to minor defects, which were pointed out and which thereafter were cured, the defendant is in no position to complain that plaintiff had breached his obligation to furnish to the defendant an abstract showing a good and merchantable title vested in him. In other words, appellant invokes a literal and strict construction of the written contract, and insists that the record does not show a breach of it, tested by that construction, notwithstanding the merits of the objection finally made by Mr. Woodruff after discovering the facts upon which that objection was predicated.

[2] We do not concur in that contention. The contract shows upon its face that plaintiff bound himself to furnish an abstract showing a good and marketable title vested in him, and his ability to do so, and contract that he would so, was the only consideration for the defendant's agreement to pay the contract price of $7,600. It would be a strained construction, indeed, to say that Yarbrough had contracted to pay the consideration for a title that was not good and marketable. The stipulations in the contract to the effect that Yarbrough would have the abstract examined and report any apparent defects, that such defects would be cured by plaintiff, and the abstract, showing that the same had been done, would be returned to the defendant for further examination, could not reasonably be construed as binding Yarbrough to accept a title not good and marketable simply because his attorney had first supposed the title was good and so stated to the plaintiff, but afterwards had found a valid objection thereto, based upon an apparent defect which had not been disclosed by the abstract. In the case of Roberts & Corley v. McFadden, 32 Tex. Civ. App. 47, 74 S. W. 105, the following definition was given, which is well supported by authorities there cited:

"By marketable title is meant one reasonably free from such doubts as would affect the market value of the estate; one which a prudent man with knowledge of all the facts and their legal bearing would be willing to accept"—citing Hollifield v. Landrum, 31 Tex. Civ. App. 187, 71 S. W. 979, and Warvelle on Vendors, §§ 299–351.

And in Abbott v. James, 111 N. Y. 673, 19 N. E. 434, it was held that, where objections to title raise doubtful and debatable questions relative thereto, which are founded partly upon questions of law and partly upon uncertain and undisclosed character of facts, the title is not marketable.

In Arey v. Baer, 112 Md. 541, 76 Atl. 843, it was held that, if the purchaser might in reasonable probability be exposed to the hazard of litigation with respect thereto, it is not marketable. In Sulk v. Tumulty, 77 N. J. Eq. 97, 75 Atl. 757, it was held that, where the marketability of the title depends upon facts outside the public records, it is not marketable, unless the necessary proofs are available to a purchaser whenever he may have future need of them.

In Blanck v. Sadlier, 153 N. Y. 556, 47 N. E. 920, 40 L. R. A. 666, it was held that, although the title tendered to a purchaser may in fact be good, yet, if it is subject to a reasonable doubt dependent upon the ascertainment of some material fact extrinsic to the record title, to be found by a jury when the question arises, the purchaser in general will not be required to complete the purchase. For other authorities upon the question, see note in 38 L. R. A. (N. S.), beginning on page 3.

[3] By another assignment appellant insists that the measure of damages applied by the trial court in awarding the defendant a recovery on his cross-action against appellant was incorrect. It is contended that the proper measure of such damages would be the recovery of the $500.00 cash consideration paid to plaintiff by the defendant when the contract was executed, with interest thereon. In other words, appellant contends that upon the issue of the measure of defendant's damages for plaintiff's breach of his contract this case is controlled by the rule announced in the case of George v. Hesse, 100 Tex. 44, 93 S. W. 107, 8 L. R. A. (N. S.) 804, 123 Am. St. Rep. 772, 15 Ann. Cas. 456, and numerous other decisions of our Supreme Court and Courts of Civil Appeals applying the same rule there announced. The case of George v. Hesse was a suit for damages for fraudulent misrepresentations which induced the plaintiff to exchange his land for that of the defendant. The fraudulent representations made by the defendant were to the effect that the land which he was giving in exchange for plaintiff's land had on it a flowing well of water, and the court held that the correct measure of damages would be the difference between the value of the property which plaintiff had parted with and the value of that which he had received in exchange, and was not the difference between the value of the property which defendant had conveyed to him and what its value would have been with a flowing well, which difference plaintiff sought to recover. Following that case, the same measure of damages was applied by our Supreme Court in Vogt v. Smalley (Tex. Com. App.) 210 S. W. 511, in which plaintiff sought a recovery for a shortage of acreage in a tract of land purchased by him and which the vendor had fraudulently represented to him contained a greater acreage. In that case the sale was made at an agreed sum per acre, and the purchaser sought to recover for the shortage in acreage at the agreed purchase price per acre for such shortage. Notwithstanding those facts, our Supreme Court held that the measure of the purchaser's damages was the difference between the price paid by him for the tract and the value of the land he actually received.

In the case of Taylor v. Hill (Tex. Com. App.) 221 S. W. 267, our Supreme Court held that a purchaser's measure of damages for shortage in acreage in a tract of land purchased by him, whether his cause of action be predicated upon misrepresentations or mutual mistake, is the difference between the consideration paid and the value of the land actually received; that decision likewise following the case of George v. Hesse. In Clifton v. Charles, 53 Tex. Civ. App. 448, 116 S. W. 121, by the Court of Civil Appeals, it was held that in a suit for breach of a contract to convey land, where the proposed vendor owns no title, and by reason of a lack of title refuses to execute a deed, and who is guilty of no fraud inducing the contract, the measure of plaintiff's damages is the amount paid by the proposed purchaser with interest. The reason for that conclusion was that the proposed vendor, notwithstanding an absence of title in him, could execute a warranty deed, in which event the purchase money paid with interest would be the measure of the purchaser's damages for breach of the warranty, according to the well-established rule of decisions. The decision in Clifton v. Charles was cited with express approval by our Supreme Court in the case of Garcia v. Yzaguirre (Tex. Com. App.) 213 S. W. 236. But in the latter case our Supreme Court further held that the measure of damages recoverable by a proposed purchaser in a suit against his proposed vendor for the latter's breach of contract to convey real estate, where the vendor has title and ability to perform his contract, but puts it out of his power to do so, or fails or refuses to carry out his contract, is the difference between the contract price of the land and its reasonable market value. To the same effect, see

3 Williston on Contracts, § 1399; 27 R. C. L. 631 et seq.; 39 Cyc. 2108. Also see note in 38 L. R. A. (N. S.) beginning on page 465, citing many cases of other states which are at variance with the decision of George v. Hesse. All the authorities cited above have reference to transactions where title to real estate is conveyed, or contracted to be conveyed, but are not applicable to an unexecuted contract to give a mineral lease on land, as distinguished from what is sometimes termed a mineral lease, but which conveys an interest in the title to the land itself, such as the lease construed in the case of Texas Co. v. Daugherty, 107 Tex. 226, 176 S. W. 717, L. R. A. 1917F, 989. And, in passing, we might add, that apparently the rule for measuring damages applied in George v. Hesse, 100 Tex. 44, 93 S. W. 107, 8 L. R. A. (N. S.) 804, 123 Am. St. Rep. 772, 15 Ann. Cas. 456, has been abrogated by an act of the Legislature in the year 1919, which became effective about two months after the contract in controversy in this case was executed. See Acts of Legislature 1919, Reg. Sess. p. 77.

The lease which Wilkirson executed and deposited in escrow in this case, and which was contemplated by the contracting parties, did not convey any interest in the title to the land but was merely a mineral lease. The granting clause in that instrument was as follows:

"Has granted, conveyed, demised, leased, and let, and by these presents does grant, convey, demise, lease, and let unto the said lessee, for the sole and only purpose of mining and operating for oil and gas and of laying pipe lines and of building tanks, powers, stations and structures thereon to produce, save, and take care of said products, all that certain tract of land situated in the county of Nolan, state of Texas, described as follows, to wit: [Here follows description of the land.]"

It seems to be well settled that the measure of damages for the breach of a contract to execute a mineral lease, such as the one in controversy in this suit, is the difference between the contract price and the market value of the lease. Rogers v. McGuffey, 96 Tex. 565, 74 S. W. 753; 16 R. C. L. § 21, p. 550; Id. § 29, p. 559. Even though it could be said that the lease which Wilkirson executed and contracted to deliver to Yarbrough would have had the effect, if delivered, to convey an interest in the land, still, in view of Wilkirson's willful breach of his contract, the measure of Yarbrough's damages would be the difference between the contract price to be paid for the lease and its market value.

For the reasons noted, the judgment as between Wilkirson and Yarbrough is in all things affirmed.

The judgment in favor of the bank is left undisturbed.

---

⟐For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes