# MICHAEL S. LEVY *vs.* IROQUOIS BUILDING COMPANY.

*Specific Performance—Marketable Title—Bona Fide Purchaser.*

Upon a bill for specific performance, where the defence is that the title to the property is not marketable, the Court does not decide whether the title is absolutely good or absolutely bad, but whether it is reasonably clear and free from doubt.

It is not every doubt, or even threat of contest, that will be sufficient to defeat a demand for the specific performance of a contract to buy land, but the doubt must be a reasonable one.

A. made a voluntary conveyance of certain property to his daughter B. in 1879, and four days later he made a will. On a *caveat* filed to this will in 1892, the same was set aside as having been obtained by fraud and undue influence exercised by B. After the filing of the *caveat*, the property so conveyed to B. was conveyed by her to the plaintiff, who agreed to sell the same to the defendant. The heirs at law of A. refused to relinquish their rights in the property, if any, but did not threaten to assail the validity of the deed from A. to B. *Held,*

That since the plaintiff was a *bona fide* purchaser for value without notice, his title was free from reasonable doubt, and that specific performance should be decreed.

Appeal from a *pro forma* decree of Circuit Court No. 2, of Baltimore City.

The case is stated in the opinion of the Court.

The cause was agreed before ROBINSON, C. J., McSHERRY, FOWLER, BRISCOE and BOYD, JJ.

*Bernard Wiesenfeld*, for the appellant, cited: *Gill* v. *Wells*, 59 Md. 492; *Todd* v. *Union Dime Sav. Instn.*, 28 N. E. Rep. 504; *Fry on Specific Perform.*, sec. 869; *Brucker* v. *State*, 19 Wis. 539; *Devlin on Deeds*, sec. 84; *Story's Eq. Jur.*, secs. 700, 826; *Yanger* v. *Skinner*, 1 Mc-

Carter's Ch. Rep. 389; *Lick* v. *Ray*, 43 Cal. 83; *Fonda* v. *Sage*, 48 N. Y. 173.

*Wm. S. Bryan, Jr.* (with whom were *James W. McElroy* and *Frank Gosnell* on the brief), for the appellee.

The appellee is a *bona fide* purchaser for value of the property in question, had no notice, actual or constructive, of the caveat proceedings, and if it had had such notice, such proceedings would not have disclosed anything concerning this property, as it was not involved in that controversy; nor has the existence of any fraud or undue influence in the execution of the deed to Mrs. Hiss attempted to be shown, much less brought home to the knowledge of the appellee.

The doubt which is sufficient to justify the rejection of a title must be considerable and rational, such as ought to induce a prudent man to hesitate. *Gill* v. *Wells*, 59 Md. 495; *Herzberg* v. *Warfield*, 76 Md. 449; *Green* v. *Pulsford*, 2 Beavan, 70; *Seldner* v. *McCreery*, 75 Md. 296.

Now, in view of the authorities, it cannot be successfully contended that Mrs. Weik has said or done anything that should prevent the appellant from completing his purchase, nor can it be contended that she has any intention of taking legal proceedings to attack the deed to Mrs. Hiss. If she had, she would naturally have communicated the same to her husband, and he (Weik) would have preserved the letter of May 10, 1894, addressed to them by Mr. Weisenfeld. Mrs. Weik not only would have notified appellant not to carry out his purchase, but would have taken steps to prevent the appellee from redeeming the ground rent reserved by the lease of January 16, 1892, the capitalization of the rent being $10,000, or two-thirds of the whole purchase money of the property; but to this day she has not commenced any action or intimated to the appellee that it has not a good and perfect title. The utmost that can be extracted from her by the appellant is "*that she will assert her legal rights whenever it suits her convenience.*" Assum-

ing that Mrs. Weik had made such statement to the appellee, and had made it prior to the time of the lease or after the execution of the lease, and prior to the pay-ment of the $10,000 on the 1st day of February, 1894, for the redemption of the rent reserved by that lease, the appellee would not have been justified in refusing to com-plete its purchase with Mrs. Hiss. For neither at the time of the lease, nor at the time of the redemption of the rent, was there the slightest suspicion that Mrs. Weik, or anyone else, would even pretend to set up any claim to the prop-erty. There never has been any *lis pendens*, as the caveat *did not relate to the property in question. Fiegley* v. *Fiegley,* 7 Md. 563. And were it a fact, that Mrs. Weik had actually taken proceedings attacking the deed, this Court would not hesitate to affirm this decree. *Owings* v. *Bald-win*, 8 Gill, 337.

Mr. and Mrs. Weik were witnesses for the appellant in this cause—proceedings instituted for the purpose of com-pelling appellant to perform his contract of purchase—and on the stand they have positively refused to state whether or not they intend to attack the title. Now, in all common honesty and fair dealing, they are estopped from ever hereafter setting up any claim to the property in ques-tion. " If a person maintain silence, when in conscience he ought to speak, equity will debar him from speaking when conscience requires him to be silent." *Funk* v. *Newcomer,* 10 Md. 317.

ROBINSON, C. J., delivered the opinion of the Court.

The plaintiff company, being the owner in fee of a lot of ground on McCullough street, sold a portion thereof, front-ing 50 feet on said street, to the defendant, for $6,666.67. The defendant paid $25 in cash, and was to pay the balance so soon as the title could be examined. This is a bill by the plaintiff to enforce the specific performance of the con-tract of sale. The defendant refuses to take the title tendered

by the plaintiff, on the ground that the title is not a *marketable title*.

The lot originally belonged to the late Bishop Ames, and he, on 3rd April, 1879, conveyed it to his daughter, Annie M. Hiss, the consideration set forth in the deed being the sum of five dollars and natural love and affection.   On the 16th January, 1892, Mrs. Hiss and her husband leased the lot to the plaintiff for 99 years, and the deed was recorded on the same day.   The lease was in consideration of $5,000 in hand paid by the lessee, now plaintiff, and in further consideration of the payment of an annual rent of $600 ; and this rent, by a covenant in the lease, was redeemable at any time after 16th January, 1894, upon the payment of $10,000 and all accrued and accruing rent to the date of redemption.

On the 1st February, 1894, Mrs. Hiss and her husband conveyed the lot in fee to the plaintiff.   The consideration set forth in the deed being $10,000 and all accrued rent, the plaintiff having exercised its right to redeem the rent of $600 per annum reserved in the lease.   The effect of this deed was to merge the leasehold interest then held by the plaintiff, thereby making it the owner in fee.   By the title papers on record, the plaintiff had therefore a clear fee simple title to the property.   It appears, however, that Bishop Ames made his last will and testament on the 7th of April, 1879, four days after the execution of the deed to Mrs. Hiss, and on a *caveat* being filed to the will by Mrs. Weik, a granddaughter of the Bishop, on the ground that it was procured by the fraud and undue influence practised and exercised over him by Mrs. Hiss, the will was set aside.

The *caveat* was filed in 1892, before the lot was leased by Mrs. Hiss to the plaintiff, and the judgment of the lower Court setting aside the will was affirmed by this Court in 1894, before the execution of the deed by her conveying the reversion.   Being apprehensive under these circumstances that proceedings might be instituted by Mrs. Weik to set aside the deed of Bishop Ames to Mrs. Hiss, the defendant submitted to her and her husband a deed relinquish-

ing all right and title to the lot in question, and which they refused to execute. And on being pressed by the inquiry, they declined to say whether or not they intended to assail the deed to Mrs. Hiss, the reply being that they *would exercise their legal rights whenever it suited their convenience.*

And the question is whether, in view of these facts, the plaintiff has a marketable title which a Court of Equity will enforce the defendant to accept? The question as to what constitutes a marketable title has been, of course, the subject of a good deal of consideration by the Courts, and the books are full of cases in which the matter has been considered. The rule at one time was to decide in every case whether the title was good or bad, and to compel the purchaser to take it as good or dismiss the bill on the ground that it was bad. But as the judgment in such case bound only the parties to the suit, and those claiming under them, and as the question might be again raised by other parties, and upon matters and evidence not before the Court in the prior suit, it was deemed to be the safer rule not to decide whether the title was absolutely good or absolutely bad, but whether it was so clear and free of doubt, that the Court would compel the purchaser to take it, or whether it was one which the Court would not go so far as to decide it to be bad, but at the same time was the subject of so much doubt that a purchaser ought not to be obliged to accept it. In other words, whatever may be the private opinion of the Court as to the validity of the title, yet if there be a reasonable doubt, either as to matter of law or matter of fact involved in it, the purchaser will not be enforced to take it. And if the objection is based upon matter of fact, some reasonable ground of evidence must be shown in support of the objection.

The purchaser has the right, we have said, to demand a title which shall enable him not only to hold his land, but to hold it in peace; and one so clear of doubt as will enable him to sell the property for its fair market value. At the

same time it is not every doubt, or suggestion, or even threat of contest that will be sufficient; otherwise an assailing purchaser might in every case raise or make such an objection. And to avoid this the rule is now well settled, that the doubt must be a reasonable doubt, and one sufficient to cause the Chancellor to hesitate, whether the purchaser should be obliged to complete the contract of sale. And the question in this case comes down to this: "Whether the facts to which we have referred are in themselves sufficient to raise a *reasonable doubt* as to the plaintiff's title?" And in answer to this question, it is sufficient to say that at the time, the plaintiff bought the leasehold interest and the reversion, its vendor, Mrs. Hiss, had, so far as the records show, a clear, fee simple title to the lot in question; and further, that there had been no threat, or even intimation, at that time, that Mrs. Weik or any other person intended to assail the deed to her; and further, no such proceeding has been instituted. There was, it is true, a judgment setting aside the will of Bishop Ames, but the title of Mrs. Hiss, under the deed, was in no manner involved in that suit, nor would the judgment be evidence in a proceeding involving her title under the deed.

The appellant must therefore be considered as a *bona fide purchaser for a valuable consideration* from a vendor holding a fee simple title under a deed from Bishop Ames, without notice, actual or constructive, of an intention or purpose of any one claiming through him to assail it. And being a *bona fide* purchaser without notice, no proceeding by Mrs. Weik could in any manner affect its title. The objection, therefore, made to plaintiff's title, is not sufficient to create a reasonable doubt as to its validity. And unless there be such a doubt the defendant must accept the title tendered to him.

*Decree affirmed.*

(Decided December 19th, 1894.)