## DUGAL LINDSAY AREY *vs.* LEWIS BAER ET AL.

*Vendor and Purchaser—Adverse Possession of Alley—Title Free from Reasonable Doubt.*

A private alley once passed through a lot of ground, but for the last fifty years the alley has been built over and occupied exclusively by the plaintiff, as the owner of the lot and his predecessors in title. *Held,* that under these circumstances the plaintiff has such a title by adverse possession to the alley that a purchaser of the lot, including the alley, will be compelled to accept the title under a bill for specific performance, since it is free from reasonable doubt.

*Held,* further, that even if the alley had once been a public alley, the circumstances of the case would create an estoppel against the public to assert a right to its use.

*Decided February 11th, 1910.*

Appeal from the Circuit Court of Baltimore City (HEUISLER, J.).

The cause was submitted to the Court on briefs by:

*Crain & Hershey,* for the appellant.

*Myer Rosenbush,* for the appellees.

BURKE, J., delivered the opinion of the Court.

It appears from the record that in the year 1833 and prior thereto there was an alley twenty feet wide, beginning at Charles street at a distance of about eighty feet south from the intersection of Charles and Pratt streets in Baltimore City, and running parallel with Pratt street. This alley, which appears to have been a private alley, crossed or bisected the property mentioned in these proceedings, which

was then owned in fee simple by the Baltimore & Ohio Railroad Company. The railroad company did not own the fee in this alley; but under the terms of the grants to it in 1831 and 1833 that company acquired an easement or a right of way in the alley. Whether it originally ran to Light street does not appear, but it probably did. It was known as Rogers alley. In 1855 the Baltimore & Ohio Railroad Company conveyed to Joseph F. Donovan a portion of its property which bounded on this alley. In the description of the lots conveyed to Donovan no mention is made of Rogers alley, a portion of which was embraced in the deed to him. In 1856 Donovan leased a portion of this lot to Christopher C. Hyatt, and in this deed Rogers alley is not mentioned. By mesne conveyances as follows this leasehold estate became and now is vested in the appellees, viz, assignment from Chritopher C. Hyatt to John Henderson, dated May 7th, 1877; assignment from John Henderson to James E. Mason and Samuel C. Mason, dated February 1st, 1892; assignment from Alice R. Mason *et al.* to the appellees, dated 21st day of November, 1906. On the 27th of March, 1909, the appellees entered into an agreement with the appellant for the sale of this leasehold estate. This agreement recites that the appellees agrees to sell and the appellant agrees to purchase the building and premises in the City of Baltimore, known as No. 21 and No. 23 East Pratt street, fronting thirty-nine feet six inches, more or less on East Pratt street, and having an even rectangular depth of about one hundred and forty feet, more or less, to the north wall of the property recently erected by the appellees, said lot being free from encumbrances, and with a good and marketable title, subject to an annual ground rent of seven hundred and fifty dollars ($750) at and for the sum of eighteen thousand five hundred dollars ($18,500); one thousand dollars was paid in cash as a deposit upon the purchase price, and the balance thereof to be paid in cash within thirty days from the date of the agreement. There are a number of other provisions in the contract; but these

need not be noticed as they are in no way involved in this case.

The appellant refused to complete the contract, and the vendors filed a bill for specific performance of the contract of sale. The sole reason why the appellant refused to take the property is stated in his answer to be that the appellees "are not possessed of said property by a good and marketable title, and are unable to convey to this defendant such a title for the reason that the property to be conveyed includes within its metes and bounds an alley twenty feet wide, called Rogers alley, which alley passes through the lot claimed to be owned by the complainants, and in which alley the plaintiffs have no title, but on the contrary the title is vested in others."

A replication was filed, and testimony was taken in support of the case made by the bill, but no testimony was offered by the appellant. The lower Court decreed a specific performance of the contract as prayed, and the respondent has brought this appeal. It thus appears that the single question to be decided is: Are the appellees able to convey to the vendor a good and marketable title to the property mentioned in the agreement?

There is no question about the law of the case. That has been settled by innumerable adjudications, and a reference to a few cases in this Court will suffice. "It is the established rule in equity that a purchaser will not be compelled to take a title which is not free from reasonable doubt, and which might in reasonable probability expose him to the hazards of litigation." *Second Univ. Church* v. *Dugan*, 65 Md. 460. It is said in *Levy* v. *Iroquois Company*, 80 Md. 300, that: "The question as to what constitutes a marketable title has been, of course, the subject of a good deal of consideration by the Courts, and the books are full of cases in which the matter has been considered. The rule at one time was to decide in every case whether the title was good or bad, and to compel the purchaser to take it as good or dismiss the bill on the ground that it was bad. But as the judgment in such case bound only the parties to the suit, and those claiming under

them, and as the question might be again raised by other parties, and upon matters and evidence not before the Court in the prior suit, it was deemed to be a safer rule not to decide whether the title was absolutely good or absolutely bad, but whether it was so clear and free of doubt, that the Court would compel the purchaser to take it, or whether it was one which the Court would not go so far as to decide it to be bad, but at the same time was the subject of so much doubt that a purchaser ought not to be obliged to accept it. In other words, whatever may be the private opinion of the Court as to the validity of the title, yet if there be a reasonable doubt, either as to a matter of law or matter of fact involved in it, the purchaser will not be enforced to take it. And if the objection is based upon matter of fact, some reasonable ground of evidence must be shown in support of the objection.

"The purchaser has the right, we have said, to demand a title which shall enable him not only to hold his land, but to hold it in peace; and one so clear of doubt as will enable him to sell the property for its fair market value. At the same time it is not every doubt or suggestion, or even threat of contest that will be sufficient; otherwise an assailing purchaser might in every case raise or make such an objection. To avoid this the rule is now well settled, that the doubt must be a reasonable doubt, and one sufficient to cause the chancellor to hestitate, whether the purchaser should be obliged to complete the contract of sale."

This Court has decided in a number of cases that in a proper case specific performance of a contract relating to land will be decreed where the title rests in adversary possession. *Lurman* v. *Hubner,* 75 Md. 268; *Allen* v. *Van Bibber,* 89 Md. 436; *Regents of the University of Maryland* v. *Calvary Church,* 104 Md. 636; *Cook* v. *Councilman,* 109 Md. 637.

The question, therefore, is whether upon the facts contained in this record there is any reasonable doubt as to the appellees' title to Rogers alley, as it is in that respect alone

that their title, which rests in adversary possession so far as that alley is concerned, was claimed to be defective.

There is no suggestion that the title of the plaintiff or of his predecessors to that alley has ever been questioned by any one. The evidence is clear that the portion of the alley which formerly crossed the lot in question has been occupied by buildings for more than fifty years, and that undoubted title by adversary possession has been acquired by the appellees and their predecessors in title. The portion of Rogers alley which is now open runs east from Charles street about 150 feet to the west wall of the property now owned by Crook,. Horner & Co., which is west of the property sold to the appellant. At the corner of this alley and Charles street is the business house of E. L. Parker & Co. The buildings of this firm run back and bind on Rogers alley for a distance of about 150 feet. Mr. Reese testified that for forty-eight years the property now occupied by Crook-Horner Co., which as we have said is west of the property in question, has been the eastern terminus of the alley, and that during the forty-eight years of his connection with the firm of Parker & Co. he knew that the owners and occupants of the Mason property— and it is under the Masons that the appellees derived their title,—exercised exclusive acts of user and ownership over the alley, and that for forty-eight years he knew the alley never extended any further east than the point mentioned.

Mr. Warfield, who had known the alley for sixty-five years, testified that it never extended further east than it now does. He stated that "the Baltimore & Ohio Railroad Company occupied the premises now called the Mason property on Pratt street, and they had a car yard in the rear; in fact, the Baltimore & Ohio Railroad Company's building ran back deeper than the alley, and, therefore, the alley could not have gone any further east than that without going over the tracks of the Baltimore & Ohio depot." He was asked if the lot beginning at the present eastern terminus of the alley had been occupied by buildings, and he answered as follows:

"Yes, sir; my recollection is that it had always been. What makes my recollection so distinct is that there was an old Englishman by the name of Sassfield who had a little shoemaker shop at the corner of the alley, and we had quite a large family, and I had to take the shoes to this shoemaker to be repaired in my childhood days, as I lived on Pratt street, where the Citizens National Bank now is."

This testimony was corroborated by other witnesses. The statute has long since become a complete bar to the assertion by anyone against the appellees of rights in the alley, and if it be conceded that it were a public alley, under the circumstances of the case an equitable estoppel would be created against the public to assert a right to the use of the highway. *Baldwin* v. *Trimble,* 85 Md. 396.

As the title of the appellees to the property sold is free from any reasonable doubt, we will affirm the decree.

*Decree affirmed, each party to pay one-half of the costs above and below.*