## JAMES A. REEVES, Appellant, v. G. W. ROBERTS and FARMERS' BANK OF LINCOLN.

### Division One, June 16, 1922.

1. **MERCHANTABLE TITLE: Defective Description: Ten-Acre Tract.**
   Where the contract for the sale of ninety acres of land called for
   a merchantable title, including a ten-acre tract described therein
   as "ten acres off of the north side of the southeast quarter of the
   southeast quarter of Section 14," it called for ten acres in the
   form of a parallelogram off of the north side of the forty-acre
   tract. So that where the contract was for "the northwest quarter
   of the southwest quarter of Section 13 and the northeast quarter
   of the southeast quarter and ten acres off of the north side of the
   southeast quarter of Section 14," and the deed tendered described
   the lands as they were described in the contract, but the abstract
   of title described the lands of the grantor as "the northwest quarter
   of the southwest quarter of Section 13 and the northeast quarter of
   the southeast quarter and ten acres beginning at the northeast
   corner of the southeast quarter of the southeast quarter, running
   thence south one chain and 40 links; thence west two chains and
   18 links; thence south 76 degrees west two chains and 16 links;
   thence south 39 degrees west one chain and 75 links; thence south
   57 degrees west two chains and 66 links; thence south 87 degrees
   west one chain and 46 links; thence 85 degrees west 4 chains;
   thence 84 degrees west 7 chains; thence 57 degrees west one chain
   and 20 links to the west side of said tract; thence north on said
   line 5 chains and 10 links to the northwest corner of said tract;
   thence east to the place of beginning, in Section 14, containing 90
   acres, more or less, and all in Township 42," etc., the two descrip-
   tions do not tally and do not cover the same land, in so far as
   they relate to the ten-acre tract, and the defect is fatal to a suit
   to compel the purchaser to specifically perform said contract.

2. ———: **Incorrect Name: Correction by Ex Parte Affidavits.** A recent
   deed, recorded and vital in the grantor's chain of title, naming Ida
   M. Smith as the grantee, cannot be corrected by mere *ex parte* af-
   fidavits, so as to show that the real grantee was Amy A. Smith,
   even though the affidavits are to the effect that Amy A. Smith went
   into possession after the owners conveyed the lands to Ida M.
   Smith as grantee, there being no affidavits from said owners.

3. ———: **Means Marketable Title: Affidavits Connecting Up Record
   Title: Mistakes.** The words "merchantable title" used in a con-
   294 Mo.—38

tract for the sale of land means "marketable title;" and a marketable title may be shown and defects therein explained by affidavits connecting up the showing made by the record title, such as adverse possession, or that certain persons were heirs of a deceased record owner, or a change in the name of a record owner by marriage, or that a grantor was single when he made a deed; but affidavits cannot be used to change the record title, or to correct mistakes in recorded deeds.

4. ————: Contract: Construction: Lawsuit: Specific Performance. Persons contracting for the sale and purchase of lands can designate in the contract the character of title to be delivered; they can exclude all affidavits to cure defects by agreeing upon a record title; they can agree upon a marketable title as distinguished from a purely record title; but if they by their contract agree upon what in effect is a marketable title, and there arises doubt or uncertainty about whether the seller possesses such a title, a court of equity, in a suit by him to compel specific performance of the contract, should resolve such doubt in favor of the purchaser who has refused to accept the title proffered, on the theory that no man should be compelled to buy a lawsuit unless he has contracted to buy one.

Appeal from Benton Circuit Court.—*Hon. C. A. Calvird,* Judge.

AFFIRMED.

*Montgomery & Rucker* for appellant.

(1) The affidavits attached to the abstract were admissible in evidence to show that Amy A. Smith was the true grantee in the deed made by Hannah M. Stocker and husband, and that the ten-acre tract which the appellant and his predecessors in title owned, occupied and conveyed, was the land described in the contract and the deed tendered to respondent. Jamison v. Van Auken, 210 S. W. 419; Gerhart v. Peck, 42 Mo. App. 653; Bachman v. Ins. Co., 199 Mo App. 681. (2) Affidavits not constituting a part of the abstract but procured before the trial are competent for the same purposes, because time is not of the essence of the contract. Anderson v. Hall, 201 S. W. 967; Mastin v. Grimes, 88 Mo.

478; Scannell v. Am. Soda Fountain Co., 161 Mo. 606. (3) A deed to one who buys and pays for the land, but takes a deed to himself by his wrong Christian name but his correct surname, is effective as a conveyance. Such a defect is a latent defect which is susceptible of explanation by parol evidence. Such evidence does not tend to impeach the deed, but to support and uphold it. Staak v. Sigelkon, 12 Wis. 266. (4) The requirements as to definiteness in a deed made pursuant to a judicial sale are much stricter than in a deed between private parties. Any description which would be good in a sheriff's deed is good in a deed between private parties. Hart v. Rector, 7 Mo. 532; Anderson v. Hall, 188 S. W. 81. (5) A description of a tract in a sheriff's deed as a certain number of acres being a part of a certain Congressional subdivision, supplemented by evidence that the grantor owned a tract of that number of acres in that Congressional subdivision, or that the grantor lived on the land and that the exact location of the tract in the Congressional subdivision was of public notoriety, or that the tract was known and conveyed by that description, meets all legal requirements. Webster v. Blount, 39 Mo. 500; McPike v. Allman, 53 Mo. 551; Adkin v. Moran, 67 Mo. 100; Anderson v. Hall, 188 S. W. 79. (6) There are few, if any, absolutely flawless titles. A title free from reasonable doubt is marketable; but a mere shadow or possibility or suspicion is not a ground of reasonable doubt. Jamison v. Van Auken, 210 S. W. 414.

*Henry P. Lay* for respondent Roberts.

(1) As under the terms of the contract and supplement, the respondent was entitled to a merchantable title as shown by an abstract of title, the title must be shown good by record evidence, and defects could not be cured by affidavits and oral testimony. Danzer v. Moerschel, 214 S. W. 849; Dalton v. Lybarger, 237 S. W. (Ark.) 694. (2) Even had respondent not been entitled to an

abstract of title, he would have been entitled to a marketable title, which is one which "shall protect him from anxiety, lest annoying, if not successful, suits be brought against him. He should have a title which would not only enable him to hold his land, but to hold it in peace, and if he wishes to sell it, to be reasonably sure that no flaw or doubt will come up to disturb its marketable value." Smith v. Riordan, 213 S. W. 63; Rozier v. Graham, 146 Mo. 361; Mastin v. Grimes, 88 Mo. 490. (3) The owner having executed a deed to Ida M. Smith, the presumption arises that there was a person of that name, and that by the conveyance the title vested in her. This presumption must prevail as against all persons claiming title under such deed, until it is shown by some means binding upon Ida M. Smith, if there is such a person, that her name was inserted in the deed by mistake, and that the real purchaser was not Ida M. but Amy A. Smith. The title is therefor not remarketable. Mead v. Altgelt, 136 Ill. 298; Peckham v. Stewart, 97 Cal. 147, 81 Pac. 928; Benson v. Shotwell, 87 Cal. 49, 25 Pac. 249. (4) The defendant should not be required to accept the title since the whole of the ten-acre tract described in the contract, and in the deed tendered by plaintiff, was not included in the abstract description or in the deeds in plaintiff's claim of title, and since the description in the abstract and deeds is imperfect. Heller v. Cohen, 154 N. Y. 299; Smith v. Turner, 50 Ind. 367; Maupin on Marketable Titles, (2 Ed.) 762 n. (5) "A purchaser will not be required to take a title which is doubtful in any material respect." Smith v. Riordan, 213 S. W. 63; Greffet v. Willman, 114 Mo. 119; Maupin on Marketable Titles (2 Ed.) 711. (6) The contract being executory, its enforcement is not a matter of absolute right, but rests in the sound discretion of the court, and should not be granted under the facts in this case. Smith v. Riordan, 213 S. W. 63; Ranck v. Wickwire, 255 Mo. 61; Hollman v. Conlon, 143 Mo. 378; McQuary v. Land Co., 230 Mo. 361. (7) Inasmuch as the

purchaser may suffer a heavy loss if required to take a doubtful title, while the seller can only suffer the temporary inconvenience of delay, the inclination of the courts is in favor of the purchaser, and the burden is on the seller to show a title free from all reasonable doubt. Maupin on Marketable Titles, (2 Ed.) 748; Richmond v. Gray, 3 Allen (Mass.) 27.

GRAVES, J.—Action for specific performance of a contract for the sale of real estate, i. e. ninety acres of land, in Benton County, Missouri. The contract was in writing, and by its terms Reeves sold to Roberts the following lands in said county:

"The northwest quarter of the southwest quarter of section Thirteen and the northeast quarter of the southeast quarter and ten acres off of the north side of the southeast quarter of the southeast quarter of section Fourteen, all in Township Forty-two of Range Twenty-two, containing 90 acres, more or less, except the right of way of the Mo. Pac. Railroad through said land, for the consideration of twenty-four hundred dollars and a 1920 Ford automobile due and payable as follows:

"Five hundred dollars deposit in escrow with the Farmers Bank of Lincoln, Mo.

"Nineteen hundred dollars upon the delivery ·of deed and abstract."

The automobile was to be delivered on March 16, 1920. It was delivered upon that day, at which time another contract was made to this effect:

"Witnesseth, that the said second party has delivered to said party a Ford automobile, that. he was trading to said first party as part payment for the ninety acres of land and said first party has this day deposited with the Farmers Bank of Lincoln, Mo., seven hundred dollars as a guarantee that he the said first party will deliver back to said second party the said automobile in as good condition as at present, if he, the said first party, fails to furnish said second party a merchantable title to said ninety acres."

Under the last contract Reeves deposited the $700 and under the former contract Roberts deposited the $2400 in the bank named. The final outcome of the matter was that Roberts declined to take the land upon the deed and abstract tendered, and this suit followed.

By its judgment the court found that Roberts had delivered the automobile, under the second agreement, and had deposited the $2400 balance of the purchase price, with the bank named; that Reeves had deposited the $700 on the automobile contract last named, in the bank named; that the plaintiff sold and appropriated the proceeds of the automobile, and that it was worth $700; that plaintiff failed to deliver to defendant Roberts a good and merchantable title to the land contracted to Roberts, within a reasonable time; that Roberts had suffered no special damages by reason of this failure, but that he was entitled to have back the $2400 and interest thereon, as well as the $700 for the automobile. Judgment was entered against the plaintiff and the Farmers Bank of Lincoln, Missouri, for these sums, and the same were made a lien upon the land. Costs were also adjudged against the parties in accordance with the judgment. Further details will be left to the opinion.

I. It is agreed that plaintiff was compelled to furnish a merchantable title. The questions are therefore simple. The defects pointed out as to the title are two in number. First, it is urged that there are ten acres of the land not properly conveyed, Merchantable Title: Defects. and, secondly, that the whole title failed, because of a deed to Ida M. Smith, wherein the deeds show that the only title appellant acquired was through one Amy A. Smith. Of these, and their pertinent facts, in order.

II. The deed tendered covered the lands described in the contract. That description we have set out in the statement. As to eighty acres of such land there is no

Reeves v. Roberts.

dispute. The contest, under this point, centers around the ten-acre tract, which in the contract was described as "ten acres off of the north side of the southeast quarter of the southeast quarter of Section Fourteen all in Township Forty-two of Range Twenty-two." The southeast quarter of the southeast quarter would mean a forty-acre tract, and ten acres off of the north side thereof would mean a strip containing ten acres of this forty acres, and taking the north ten acres thereof. So far the-matter is simple. There can be no question of the land contracted to be conveyed. The description would mean ten acres in a parallelogram off of the north side of this forty acres. It would mean the north one-fourth of this forty-acre tract. The abstract of title offered in evidence contains the following caption:

"The northwest quarter of the southwest quarter of Section Thirteen and the northeast quarter of the southeast quarter and ten acres beginning at the northeast corner of the southeast quarter of the southeast quarter, running thence south one chain and 40 links; thence west two chains and 18 links; thence south 76 degrees west two chains and 16 links; thence south 39 degrees west one chain and 75 links; thence south 57 degrees west two chains and 66 links; thence south 87 degrees west one chain and 46 links; thence 85 degrees west four chains; thence 84 degree west seven chains; thence 57 degrees west one chain and 20 links to the west side of said tract; thence north on said line five chains and 10 links to the northwest corner of said tract; thence east to the place of beginning, in Section No. Fourteen, all in Township No. Forty-two, Range No. Twenty-two, and containing 90 acres, more or less, in Benton County, Missouri."

Part of the abstract shows the conveyance of the land under the description given in the title of the abstract, and a part under the description in the contract. The two descriptions will not tally. As can be seen one is by

*Description of Land.*

metes and bounds so far as the ten acres are concerned, and the other by Government surveys. The two descriptions do not cover the same land, so far as the ten acres are concerned. In this there was a fatal defect, unless the same is covered by other matters. This can be considered later, if under other facts, it becomes material.

III. The tendered abstract of title shows that in 1912 Hannah M. Stocker and her husband deeded the land in question to Ida M. Smith. The next conveyance is from Amy A. Smith. This trouble is attempted to be corrected by *ex parte* affidavits in the abstract. (1) Amy A. Smith says she is the identical person who took the title to this land under the Stocker deed and that it was through a mistake that the name Ida M. Smith was written in the deed. (2) Freund avers that Amy A. Smith went into possession of the land after the Stockers. On the trial other affidavits were introduced tending to show that the Stockers undertook to convey the land, by the contract description, to Amy A. Smith, and that she took possession of it. There is nothing from the Stockers as to whom they intended to convey the land by this deed. It must be observed that this is a recent conveyance and neither the Stockers nor Ida M. Smith (if there be an Ida M. Smith) have spoken. This is a link in the title chain. It is a matter of record. To compel a buyer to take this title would amount to saying that an erroneously made deed (of record, and vital in a chain of title) can be corrected by mere *ex parte* affidavits, and and these affidavits from one side of the transaction alone. There was no word from the grantors in this deed to Ida M. Smith, either as to the real purchaser from them, or as to whom they intended to deliver possession, or did deliver possession.

The term "merchantable title" as used in this contract is the same as "marketable title" as used in the books. It is true that a marketable title may be shown by affidavits, which connect up the showing made by the

*Mistake in Grantee's Name.*

record title. Title by adverse possession may perhaps be so shown, and thus a marketable title shown. Affidavits may show the heirs where the record title rests in one deceased. Change of name by marriage may be shown, where the title rested at one time in a given person, and the name of such person was afterward changed by marriage. So too, affidavits may show the person to have been single when an instrument was executed. In fact affidavits may serve many purposes in showing a marketable title by abstract, but they must serve to explain defects in the record title, and not to change the real record title. In this case the purport of the affidavits is to change the record title, and not to supplement it. They are used for no other purpose. Mistakes and errors in recorded deeds should not be corrected in this way. For this reason, if not for others, the judgment below should be sustained.

IV. Individuals contracting for the sale of lands can designate in the contract the character of title to be delivered. They can exclude practically all affidavits, by demanding a strictly record title. The title designated by the contract before us is what is usually termed a marketable title, as such may be distinguished from a purely record title. But even in this class of contracts, if there is doubt or uncertainty about the title, the chancellor should resolve such doubt in favor of the purchaser who has refused to accept the proffered title. This upon the theory that no man should be compelled to buy a lawsuit, unless he has contracted to buy one. Quoting from an early author, Maupin on Marketable Title to Real Estate (3 Ed.) sec. 284, p. 774, says:

*Contract: Specific Performance.*

"Where the probability of litigation ensuing against the purchaser in respect of the matter in doubt is considerable; or, as it was put by Alderson, B., where there is a 'reasonable decent probability of litigation.' The court, to use a favorite expression, will not compel the purchaser to buy a lawsuit. If there be any reasonable

chance that some third person may raise a question against the owner of the estate after the completion of the contract, the title will be deemed unmarketable. ' [See, also, Fry on Specific Performance (3 Ed.) sec. 870, p. 433.]

With this break in the record title, by reason of the deed to Ida M. Smith in 1912 (not cured by limitations at the date of the transaction), the trial court could not have well said that there was not probability of a lawsuit as to this title. To perfect the record (if there was a mistake in this deed) a suit to quiet title was at least imminent. No loan company would have made a loan upon this land with the record title in its present shape, and even with the tendered affidavits. A marketable title should at least be one where a loan could be procured thereon, if one was desired. The case of Jamison v. Van Auken, 210 S. W. 404, in so far as it announces any law upon a marketable title, is in harmony with what is above said. The concurrences in that case are such as to leave it problematical as to just what was ruled by a majority of the court. Nor do the views herein expressed oppose those in Danzer v. Moerschel, 214 S. W. 849. In this case BLAIR, J., makes it clear that the title contracted between those parties was more than a mere marketable title. The whole trend of this opinion so shows, and for that reason there is no conflict between it and the Van Auken Case, supra.

All things considered the judgment *nisi* is correct, and should be affirmed.

It is so ordered. All concur, except *Woodson, P. J.,* who is absent.