RALPH A. GARNER ET UX. *v.* UNION TRUST COMPANY OF MARYLAND

[No. 21, October Term, 1945.]

*Decided December 17, 1945.*

The cause was submitted to MARBURY, C. J., DELA-PLAINE, COLLINS, GRASON, HENDERSON, and MARKELL, JJ.

*William C. Rogers* on the brief for the appellants.

*Walter H. Buck* and *Eben F. Perkins* on the brief for the appellee.

DELAPLAINE, J., delivered the opinion of the Court.

This suit was brought by Union Trust Company of Maryland to obtain specific performance of a contract for the sale of land situated on Massachusetts Avenue in the City of Baltimore. On February 2, 1945, complainant agreed to sell the land to Ralph A. Garner and his wife, defendants, for $4,200 and to give a "good and merchantable title." Defendants made a partial payment of $500, but subsequently refused to accept the title.

The record in this case shows: (1) that a deed exe cuted by Daniel A. Leonard on December 22, 1919, purported to convey the land to Linthicum Realty Company in fee simple, but actually the land was subject to an annual ground rent of $75.15, and the deed recited that the ground rent would be extinguished by a deed from Charles J. Bonaparte to Linthicum Realty Company "to be recorded" among the land records; (2) that on the same day Linthicum Realty Company executed a mortgage on the land to West Baltimore Bank; (3) that on August 15, 1920, Charles J. Bonaparte and others conveyed the fee to Linthicum Realty Company so that "the

leasehold estate may be merged in the fee"; (4) that on July 13, 1933, the Circuit Court of Baltimore City appointed a trustee to sell the property in accordance with the mortgagor's assent in the mortgage and the statute regulating sales under decrees pursuant to mortgagor's assent (Baltimore City Charter, 1938 Ed., Secs. 840-855); and (5) that on November 10, 1933, the trustee sold the property at foreclosure sale to complainant. Upon this state of facts the chancellor ordered defendants to accept the title and pay the balance of $3,700 due on the purchase price. From that decree defendants appeal to this Court.

It is a well established principle that a vendor of real estate, in order to maintain a suit for specific performance of the contract of sale, must show that the title tendered by him is marketable. A marketable title may be defined as a title without encumbrances and free from reasonable doubt as to any question of law or fact that may call it in question in the future and subject the purchaser to the hazard of litigation. It is recognized that the term "merchantable" title is synonymous with "marketable title." *Genske v. Jensen,* 188 Wis. 17, 205 N. W. 548; *Reeves v. Roberts,* 294 Mo. 593, 242 S. W. 956; *Hess v. Bowen,* 237 F. 510; 26 *Words and Phrases,* Perm. Ed., pp. 542, 543. As the decree in a suit for specific performance is *in personam* and not *in rem,* it binds only those who are parties to the suit and those claiming under them, and does not decide the issue in any way as against the rest of the world. If, therefore, there is any reasonable chance that some third person might question the title after the consummation of the contract, the Court considers this a circumstance which renders the bargain a hard one for the purchaser, and will not compel him to execute it. *Gill v. Wells,* 59 Md. 492; *Levy v. Iroquois Building Co.,* 80 Md. 300, 30 A. 707; *Sharp Street Station of Methodist Episcopal Church v. Rother,* 83 Md. 289, 296, 34 A. 843; *Arey v. Baer,* 112 Md. 541, 543, 76 A. 843; *Hunting v. Damon,* 160 Mass.

441, 35 N. E. 1064; *Wesley v. Eells,* 177 U. S. 370, 20 S. Ct. 661, 44 L. Ed. 810.

However, a title, to be marketable, need not be free from every conceivable technical criticism, but only from those possibilities of defect which are sufficient to raise a reasonable doubt. It is not every possibility of defect or even threat of contest that will be sufficient to make a title unmarketable, for it may be practically impossible for a vendor to anticipate all imaginable objections which, if they existed, would defeat his title. *Levy v. Iroquois Building Co.,* 80 Md. 300, 305, 30 A. 707; *Morse v. Stober,* 233 Mass. 223, 123 N. E. 780, 9 A. L. R. 78. For instance, equity will decree specific performance of a contract for the sale of land even where the title is based upon adverse possession, if the title is so clearly proved and so free from doubt that it may serve as a proper foundation for a decree against the purchaser. *Arey v. Baer,* 112 Md. 541, 76 A. 843; *Potomac Lodge v. Miller,* 118 Md. 405, 84 A. 554; *Taussig v. Van Deusen,* 183 Md. 436, 37 A. 2d 915. In other words, a title, to be marketable, must be one which a reasonably intelligent purchaser, who is well informed as to the facts, would be willing to accept in the exercise of ordinary business prudence. *Hewitt v. Parsley,* 101 Md. 206, 60 A. 619; *Todd v. Union Dime Savings Institution,* 128 N. Y. 636, 28 N. E. 504, 506; *Moore v. Elliott,* 76 Wash. 520, 136 P. 849.

Since a purchaser is not bound to accept any title less than an unencumbered legal title to the fee (*Gill v. Wells,* 59 Md. 492; *Shea v. Evans,* 109 Md. 229, 72 A. 600), it is clear that an equitable title is not marketable, for in reality it is not a title at all, but merely a right to the legal title. By its very nature an equitable title exposes the holder to the hazard of litigation to acquire the legal title, and a purchaser cannot be compelled to accept a title which may be maintainable only by a suit in equity. The vendor must tender a title which will give the purchaser secure possession both at law and in equity. *Owings v. Baldwin,* 8 Gill 337, 350; *Van Zandt v. Garret-*

*son,* 21 R. I. 418, 44 A. 221; *San Mateo Land Co. v. Elem,* 8 Cir., 293 F. 869, 874. Hence, a leasehold title, while marketable as such, is not such a title as will satisfy a contract to convey a marketable title where there is nothing in the contract to indicate that anything less than a fee simple title was intended. *Arnd v. Lerch,* 162 Md. 318, 323, 159 A. 587.

The test for determining the marketability of a title claimed under a foreclosure sale, like any other title, is whether there is any color of outstanding title or any doubt sufficient to raise a reasonable probability that the purchaser may be subjected to litigation to defend his title. *Larson v. Thomas,* 51 S. D. 564, 215 N. W. 927, 57 A. L. R. 1246. In *Becker v. Minber Corporation,* 177 Md. 583, 10 A. 2d 707, we indicated that a purchaser of real estate has the right to impeach the validity of a foreclosure title by showing that the Court in the foreclosure proceedings did not have jurisdiction either as to the subject matter or the parties. In the case before us Linthicum Realty Company had only a leasehold estate when it mortgaged the property on December 22, 1919, but it expressed its intention to mortgage the fee simple estate. A corporation has the power to mortgage property to be acquired in the future, and, if it does so, equity considers that the lien of the mortgage fastens upon the property as soon as it is acquired by the mortgagor. *Diggs v. Fidelity & Deposit Co.,* 112 Md. 50, 72, 75 A. 517, 20 Ann. Cas. 1274. We adopt the rule, as stated in New York, that where a person holding a leasehold estate mortgages the property and subsequently acquires the fee, and on foreclosure after his death all persons who can claim under him are made parties, and the net proceeds of sale are distributed among all those entitled thereto representing the mortgagor's interest, the foreclosure title is marketable. *Hirth v. Zeller,* 108 App. Div. 198, 95 N. Y. S. 747; 66 *C. J., Vendor and Purchaser,* Sec. 568.

In this case the foreclosure sale was made by a trustee appointed by the Court in a suit between Union Trust

Company, complainant, and Linthicum Realty Company, defendant, and the sale was finally ratified by the Court. The statute regulating sales under decrees pursuant to mortgagor's assent contains the following provision: "Such sales and the conveyances thereupon shall have the same effect, if finally ratified by said court, as if the same had been made under decrees between the proper parties in relation to the mortgages, and in the usual course of said court." Baltimore City Charter, 1938 Ed., Section 843. Ordinarily a foreclosure sale passes only the title which the mortgagor had in the property at the time of the recording of the mortgage. *Carroll v. Kershner*, 47 Md. 262, 276. But under this statutory provision the foreclosure sale passes all the right, title and interest which the mortgagor and the mortgagee had at the time of the decree in and to all property which the mortgage purported to convey. When the Court passed the decree on July 13, 1933, authorizing the trustee to sell the property in this case, Linthicum Realty Company, mortgagor, held the naked legal title to the fee acquired from Bonaparte and others on August 15, 1920. The mortgage was a legal lien on the leasehold title and an equitable lien on the fee. However, by virtue of the statute, the purchaser at the foreclosure sale acquired the legal title to the leasehold as well as the legal and equitable titles to the fee, and by merger the full legal title in fee simple, subject to any intervening rights or liens which constitute equities superior to the equitable lien of the mortgage.

In this case the record does not show any equities superior to the equitable lien of the mortgage. According to the stipulation in the case, judgments were entered against Linthicum Realty Company after August 15, 1920, when the legal title to the fee was acquired. But the title of the purchaser at the foreclosure sale is not affected by these judgments, because they are not superior in right or lien to the equitable lien of the mortgage. The law is clear that a judgment is a general lien relating to the time when it is recorded and is subordinate to the

superior equity of a prior specific lien. *Dyson v. Simmons,* 48 Md. 207; *Glen Morris-Glyndon Supply Co. v. McColgan,* 100 Md. 479, 60 A. 608; *Cramer & Sons v. Roderick,* 128 Md. 422, 98 A. 42; *Union Trust Co. v. Biggs,* 153 Md. 50, 60, 137 A. 509.

As complainant has tendered a good and merchantable title to defendants, we will affirm the decree of the chancellor ordering specific performance of the contract.

*Decree affirmed, with costs.*