BERLIN *v.* CAPLAN

[No. 30, October Term, 1956.]

334

*Decided December 7, 1956.*

336

The cause was argued before BRUNE, C. J., and COLLINS, HENDERSON, HAMMOND and PRESCOTT, JJ.

*Robert S. Rody* and *Eldridge Hood Young*, with whom was *H. Harry Rosenberg* on the brief, for the appellant.

*Herbert Myerberg* for the appellee.

COLLINS, J., delivered the opinion of the Court.

This is an appeal from a decree dismissing appellant's bill of complaint, for specific performance of a contract.

On March 3, 1954, Rosalie Berlin, as vendor, appellant, and Henry E. Caplan, as vendee, appellee, entered into a written contract by which appellant bargained and sold to the appellee, and the appellee purchased, properties numbered 1817, 1819, 1823, 1825, 1829, 1831, 1833, 1835, and 1837 Lorman Street, in Baltimore City, subject to annual ground rents of $48.00 on each property. The price was $16,000.00, of which sum $1,000.00 was paid prior to the signing of the contract, the balance of $15,000.00 to be paid in cash within sixty days from the date thereof, time to be the essence of the agreement. Upon payment of the unpaid purchase money a deed was to be executed by the vendor to the vendee, conveying the properties "by a good and merchantable title". The contract also provided, among other things, that it was the entire agreement and no statement or representation, not endorsed thereon, was to be binding upon the parties. The vendor warranted that no notices had been issued requiring repairs or renovations of the properties. The vendee assumed all responsibility for any such notices that might be issued in the future.

Prior to the date of settlement the appellee notified the appellant that the title to 1825 Lorman Street was defective. Settlement, not having been made within the sixty days speci-

fied in the contract, the appellant, on August 25, 1954, filed a bill of complaint against the appellee asking that the agreement be specifically enforced; that the appellee be required to pay the unpaid purchase money; that appellee be enjoined and restrained from prosecuting a suit theretofore instituted by him against the appellant to recover the sum of $1,000.00 paid on account of the purchase price pending the determination of this cause; and for other and further relief. An answer was filed to that bill. A cross bill of complaint was filed by the appellee asking, among other things, that the appellant be ordered to pay to the appellee the sum of $1,000.00 paid on execution of the contract, plus $103.00 for title examination, and for other and further relief. The chancellor filed an opinion in which he held, among other things, that the title to 1825 Lorman Street was not merchantable and, by decree, dismissed the original bill of complaint and ordered on the cross bill that the appellant pay the $1,103.00 demanded by the appellee, and the costs of the proceeding. From that decree appellant appeals.

Testimony was taken in open court by the chancellor. Irving D. Alter, a member of the Maryland Bar, was employed by the appellee to examine the titles to these leasehold properties. On April 12, 1954, he wrote a letter to the appellant in care of Benjamin F. Rody, a member of the Maryland Bar, in which he stated that the title to 1825 Lorman Street was vested in one Dobra H. Rosan by reason of an incorrect description in a deed recorded among the land records of Baltimore City in S. C. L. 4082, folio 235, which error had been perpetuated to the present time; that since Dobra Rosan was deceased and had died intestate, it would be necessary to take proceedings in the Orphans' Court so that a confirmatory deed might be obtained from her heirs, assigns or personal representatives; that it would also be necessary to correct the inventory in the estate of Barney Lipsitz, who later entered the chain of title of these properties; that his client, the appellee, was ready to take the properties under the terms of the contract which expired on May 3, 1954; that inasmuch as time was of the essence, it would be necessary to have the defect in title corrected prior to the expiration of the contract; and

that, if the defect could not be corrected by May 3, 1954, the $1,000.00 deposit and the $103.00 for title expenses must be paid to his client.

On April 26, 1954, Mr. Alter wrote another letter to the appellee in care of Mr. Rody stating that he had received no reply to his letter of April 12th. He again called attention to the fact that proceedings were necessary in the Orphans' Court; that it would take at least six months for the necessary notice to creditors to expire; that it would seem impossible to correct the defect in title within the time limited by the contract; that his client was unwilling to extend the time limit; and he insisted that the $1,103.00 be paid to the appellee.

On April 29, 1954, Wendell D. Allen, a member of the Maryland Bar, as attorney for Mrs. Berlin, wrote a letter to Mr. Alter in which he said that his letters of April 12th and April 26th had been referred to him; that proceedings were then in process to clear the title to 1825 Lorman Street, and that "This is to advise you that Mrs. Berlin is ready, able, willing and desirous of settling for the eight properties in accordance with the Contract of Sale dated March 3rd, 1954. This is an instance in which the well known equitable doctrine of abatement applies. The proper abatement in this instance is 1/9th of $16,000, under which you will receive a deed and good title to eight of the nine properties. In your letter of April 26th, 1954, to Mrs. Berlin you take the unreasonable view of demanding a return of the deposit of $1000, plus $103, for expenses. The sum of $1000, paid as a deposit, at the settlement, in accordance with the Contract, will be applied as a credit against 8/9th of the $16,000, which, under the abatement principle, will be the purchase price of the eight properties above mentioned. I do not wish to appear arbitrary in this matter, but if you persist in your view, we can very easily file a bill in equity for specific performance, and I feel quite sure that the many adjudicated cases of the Court of Appeals of Maryland uphold this fair and equitable doctrine of abatement."

Dobra Rosan, who married Barney Lipsitz and thereby became Dobra Lipsitz, died intestate on September 8, 1940. Barney Lipsitz, the father of the appellant, died on July 10,

1951, and by his will devised and bequeathed to the appellant all the leasehold properties which he owned at the time of his death. The appellant testified that she had known the properties in question ever since she could remember; that her father and mother were in possession of these properties for at least twenty-three or twenty-four years; that she helped them at times to collect the rents; and that she had paid taxes and ground rents on the properties since she acquired ownership under her father's will.

Benjamin F. Rody, Esquire, counsel for the appellant, was called as a witness by the appellee. He stated that, after receiving the letters of April 12th and April 26th from Mr. Alter, he consulted with Mr. Allen, who answered appellee by his letter of April 29th; that he afterwards consulted with H. Harry Rosenberg, a member of the Maryland Bar, and determined that the titles of the properties agreed to be sold were good and merchantable and, therefore, it was unnecessary to continue or conclude the proceedings already started in the Orphans' Court. Testifying in rebuttal, he said that during negotiations with Mr. Caplan, which culminated in the contract price of $16,000.00, those negotiations from the beginning were in even one hundred dollar amounts on a per house basis. Mr. Caplan, on cross-examination, had stated that Mr. Rody referred to the houses on that basis, but he insisted he was obliged to consider the negotiations on a group basis.

It appears from the record that No. 1825 Lorman Street, acquired by Joseph Silverstein and Lena Silverstein, his wife, in 1919 by a deed from one Engel in which the properties were described by metes and bounds, the first lot described was actually No. 1841 and the seventh lot described was No. 1825. After the seventh described lot appeared "Improvements being known as 1825-1829-1831-1833-1835-1837-1841 Lorman Street respectively. Subject to annual rent of $54.00 on the 1st lot and $48.00 on the remaining 6 lots." Although the word "respectively" was used, the house numbers were given in inverse order. On August 13, 1923, the Silversteins executed a deed to Dobra Rosan, who later married Barney Lipsitz, in which the properties therein were described by house num-

bers only. No. 1825 was one of the lots conveyed. No. 1841 was not included. There was no metes and bounds description. This deed stated "subject to annual rent of $54.00 on 1825 Lorman Street and $48.00 on the remaining lots". In fact, $54.00 is the ground rent on 1841. The "being clause" refers to the deed from Engel to Silverstein for a more particular description. On the same day the Silversteins conveyed 1841 Lorman Street, a property not covered in the contract of sale before us, to someone else. Subsequently, apparently in contemplation of her later marriage, Dobra Rosan made various straw type conveyances. In one of these on September 28, 1923, she conveyed to Hinda D. Resnick properties which contained the following description: Beginning for the 6th on south side of Lorman Street at distance of 81' east from southeast corner of Lorman Street and Monroe Street and running thence east binding on south side of Lorman Street 13' 6" thence south parallel with Monroe Street 70' to an alley 4' wide thence west on north side of said alley 13' 6" and thence northerly by a straight line 70' to place of beginning and *known as No. 1825 Lorman Street.* Subject to ground rent of $54.00. "The lots hereinbefore * * * 6thly * * * described being the same lots" as in deed August 13, 1923, S.C.L 4060-1 from Silverstein to Rosan. The description of the sixth lot, although referred to as 1825 Lorman Street, is in fact a description of 1841 Lorman Street, which Dobra Rosan never owned. Also, the ground rent is erroneously stated, as in the previous deed, to be $54.00, which is the correct ground rent for 1841. The ground rent for 1825 is $48.00.

On April 16, 1926, Hinda D. Resnick conveyed properties to Barney Lipsitz and Dobra Lipsitz, his wife, including number six aforesaid with the identical description, house number and ground rent as in the preceding deed to her from Dobra Rosan. The being clause stated that it was the same eleven lots of ground as in a deed from Rosan to Resnick.

In the answer to appellant's bill of complaint, the appellee also claimed a defect in the title of lot 1819. He also claimed a defect in the title to 1837 by reason of a party wall agreement. The appellee has apparently abandoned any defense

based on 1819 and 1837 and relies on the defect in the title of 1825 alone.

The question before us, therefore, is whether the deed of September 28, 1923, from Rosan to Resnick, which described by metes, bounds, courses and distances, lot 1841, with the correct ground rent for that lot, and stated that it was known as 1825 Lorman Street, conveyed a merchantable title to 1825. If not, the title is still in the heirs and assigns of Dobra Rosan. If the deed from Rosan to Resnick did not convey 1825, then for the same reasons the deed from Resnick to the Lipsitzs did not convey it.

Appellant relies on the fact that the deed from Rosan to Resnick contained a "being clause" which ultimately referred back to the deed from Engel to Silverstein. That deed, however, contained both lots 1841 and 1825. Miss Mary Arabian, a member of the Maryland Bar, who had done title work for twelve years, called as a witness by the appellant, and who had examined the title to 1825, testified that in her opinion the appellant had a good and merchantable title to 1825. However, she admitted that as a practical matter it might be well to get the appellant's mother or stepmother to join in the deed to prevent any question. Of course, whether the title to property is marketable is a question of law for the court, and the opinion of a conveyancer or lawyer on that question is not admissible. *Wlodarek v. Thrift,* 178 Md. 453, 469, 13 A. 2d 774. However, no objection was made to Miss Arabian's testimony on that ground and apparently it, and the subsequent testimony of R. Manfred Kwasnik, a member of the Maryland Bar, was admitted by agreement of counsel.

Mr. Kwasnik, called as a witness by the appellee, and who specialized in title work, stated that title to 1825 Lorman Street was outstanding in Dobra Rosan, or her personal representatives; that the "being clause" in the deed from Rosan to Resnick, which referred to the deed from Engel to Silverstein, which also incorrectly described 1825, did not correct the defect because the deed from Engel to Silverstein contained both 1825 and 1841. He further testified that the description of the property from Rosan to Resnick is definitely for 1841, which Rosan did not own. He further said, in

running the index, there were two sets of conveyances. For the description of 1841 there was a chain of title to the owners of 1841, and another chain from Rosan to Resnick, from Resnick to the Lipsitzs, and so on. The description of 1825 had disappeared from the records.

In *Cochrane v. Harris,* 118 Md. 295, 84 A. 499, on June 30, 1855, Thomas I. McKaig and Alpheus Beall, as executors, conveyed unto themselves personally more than fourteen separate lots or parcels of land in Allegany County. In 1876 a deed, by its granting clause, conveyed all the grantors' "right, title and interest in and to the hereinafter described pieces or parcels of ground * * * as conveyed by Thomas I. McKaig" and another by deed bearing date June 30, 1855. Then followed a description of several lots. The 1855 deed conveyed not only the lots specifically described in the 1876 deed but also several other pieces and parcels of ground. It was there held that the 1876 deed conveyed only the lots specifically described in it and did not convey all the parcels or pieces of ground described in the 1855 deed.

In *Cassidy v. Charlestown, etc., Bank,* 149 Mass. 325, 21 N. E. 372, the deed contained an exact description by metes and bounds of the Colesworthy lot, which could not be applied to any other lot. The "being clause" referred to a deed which correctly described the Locke lot. The Court there held that, if it could resort to external evidence, it might appear that the intention was to convey the Locke lot but, in order to decide the intent, the deed itself should be looked at and, if the terms of the deed do not express the intent, it must fail. The Court said in that case: "Where, as in this case, the deed conveys one estate by a particular description, such description must prevail over a subsequent general reference to a prior deed made for another purpose, and such reference must be rejected."

As to any claim of title by adverse possession, the only evidence to support this is the testimony of the appellant that her father and mother were in possession of the properties for at least twenty-three or twenty-four years, and at times she helped them collect the rents. For short times the houses were vacant. As pointed out by the chancellor, the family

did not occupy the Lorman Street properties, or any of them. The mere fact that someone in the house paid rent may be consistent with lack of ownership in the collection of those rents, as for instance where rents may be paid under a sub-lease or otherwise. There is no evidence of open, notorious, adverse, exclusive, and continuous possession of the properties for the required period, as in *Novak Realty Co. v. Orphans' Home,* 153 Md. 390, 393, 138 A. 250; and *Parks v. Welch,* 174 Md. 548, 549, 199 A. 506.

Code, 1951, Article 21, Section 13, provides: "All deeds conveying real estate which shall contain the names of the grantor and grantee, or bargainor and bargainee, a considera-tion in cases where a consideration is necessary to the validity of a deed, and a description of the real estate sufficient to identify the same with reasonable certainty, and the interest or estate intended thereby to be conveyed, shall be sufficient, if executed, acknowledged and recorded as herein required." Of course, a vendee, by specific performance of a contract, should not be required to take real estate, the title to which is not free from doubt and which might subject him to liti-gation. Where the doubt as to the validity of the title pro-duces real *bona fide* hesitation in a prudent man, not based on captious, frivolous, and astute niceties, the vendee should not be compelled by specific performance to take that title. *Cityco Realty Co. v. Friedenwald,* 130 Md. 329, 333, 100 A. 374. A title to be marketable need not be free from every conceivable technical criticism. However, if the defects are such as are sufficient to raise a reasonable doubt, such title is not marketable. *Garner v. Union Trust Co.,* 185 Md. 386, 390, 45 A. 2d 106. A marketable title is one which a rea-sonable purchaser, who knows the facts and their legal bear-ing, would be willing to accept in the exercise of that prudence which business men ordinarily use in the transaction of their own affairs. *Zulver Realty Co. v. Snyder,* 191 Md. 374, 384, 62 A. 2d 276. If there is a reasonable probability that the purchaser may be subjected to the hazard of litigation to de-fend his title, that title is not marketable. *Zepp v. Darnall,* 191 Md. 68, 73, 59 A. 2d 774. A marketable title is one which is free from encumbrances and any reasonable doubt

as to its validity and such that a reasonably intelligent person, who is well informed as to the facts and their legal bearing, and who is ready and willing to perform his contract, would be willing to accept in the exercise of ordinary business prudence. To be marketable the title must be so far free from defects as to enable the purchaser to not only hold the land in peace, but also, if he wishes to sell it, for him to be reasonably sure that no flaw in the title will appear to disturb its market value. A mere speculative possibility that a defect might appear sometime in the future will not render a title unmarketable. *Sinclair v. Weber,* 204 Md. 324, 334, 104 A. 2d 561.

The rule at one time seems to have been that the court should decide in every case whether the title was good or bad and to compel the purchaser to take it as good, or dismiss the bill on the ground that it was bad. As stated in *Levy v. Iroquois Co.,* 80 Md. 300, 304, 30 A. 707, the safer rule seems to be not to decide whether the title is absolutely good or absolutely bad, but whether it is one which the court would not go so far as to decide it to be bad, but at the same time was subject to so much doubt that a purchaser ought not to be obliged to accept it. If there be a reasonable doubt either as to matter of law or matter of fact involved and the title is not so free of reasonable doubt as will enable the purchaser to sell the property for its fair market value, he should not be compelled to take it. Of course, the doubt must be a reasonable one. *Hewitt v. Parsley,* 101 Md. 206, 209, 60 A. 619; *Arey v. Baer,* 112 Md. 541, 543, 544, 76 A. 843; *Herbold v. Montebello Ass'n,* 113 Md. 156, 162, 77 A. 122; *Wagner v. Bealmear & Son Co.,* 135 Md. 690, 692, 109 A. 466.

The appellant relied strongly on the following quotation from *Lewis v. Kinnaird,* 104 Md. 653, 658, 65 A. 365, where it was said: "In *Roberts v. Roberts, supra,* [102 Md. 131, 154, 62 A. 161], Judge Boyd, in delivering the opinion clearly said: 'If a grantor intends to convey part of his property, of course he must describe it specifically, but if he intends to convey all of it, and uses such language as in this deed, who could be misled or in doubt as to what he conveyed? The ob-

ject of sec. 9, Art. 21 of the Code is to require sufficient notice to the public and certainty as to what is conveyed.' * * * The lot purchased by the appellant is also described by the number of the house erected thereon, as 1020 W. Lexington street. We do not understand there is any dispute as to the actual location of No. 1020 W. Lexington street, as described in the mortgage, and this being correct, there can be no difficulty, as to an identification of the property." However, in the case before us, 1825 is particularly described by metes, bounds, courses and distances, which in fact described 1841.

The title expert for the appellant admits that as a practical matter the appellant's mother or step-mother should join in the deed. Here, not only is 1841 described by metes, bounds, courses, and distances, but the ground rent of $54.00 applies to 1841 and not to 1825. The only possible references to 1825 are the words "known as 1825 Lorman Street". If Dobra Rosan had owned 1841, it could hardly be contended that a purchaser from her would not have had a reasonable claim to 1841, under a deed containing the same description, as in the deed from Rosan to Resnick. As pointed out by Mr. Kwasnik, the description of 1825 has disappeared from the records. There is nothing here to show that the appellant is the only living child or descendent of her mother, formerly Dobra Rosan, and later Dobra Lipsitz. We cannot say that the title to 1825 is so free from reasonable doubt as would enable the appellee to sell it for its fair market value. The appellee, in buying 1825, might well be buying a law suit.

Also, in the letter of April 29, 1954, the attorney for the appellant advised the appellee that appellant was ready, able, willing, and desirous of settling for eight properties, not nine, as specified in the contract. The letter also stated that the doctrine of abatement applied. Abatement comes in only because the grantor cannot convey the amount called for in the contract. Where there is a substantial defect with regard to the nature, character, situation, extent, or quality of the estate, which is unknown to the vendee, and in regard to which he is not put upon inquiry, specific performance will not be decreed. *Reigart v. Fisher,* 149 Md. 336, 346, 131

A. 568. That letter more or less admits that the appellant was not able to convey the nine properties called for in the contract. She was ready to convey only eight. This amounted to a substantial defect. *Keating v. Price,* 58 Md. 532. There was no testimony other than that of Mr. Rody that the contract price was figured on a per house basis. This was denied by the appellee. There is no testimony that the houses, contracted to be sold, were of equal value. It was not until the bill of complaint was filed in this case that appellant claimed she was ready, willing, and able to convey the nine properties, which we here find she was not able to convey by a merchantable title. The decree will therefore be affirmed.

*Decree affirmed, with costs.*